**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GALLERIA WEST LOOP** | § | **Case No. 23-50027-cag** |
| **INVESTMENTS, LLC,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |

## MOTION TO DISMISS BANKRUPTCY CASE

### NEGATIVE NOTICE – LBR 9014

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

**TO THE HONORABLE CRAIG A. GARGOTTA, CHIEF U.S. BANKRUPTCY JUDGE:**

Veritex Community Bank ("**Veritex**"), as a secured creditor and party in interest in the above-captioned bankruptcy case (the "**Bankruptcy Case**" or "**Case**") of Galleria West Loop Investments, LLC (the "**Debtor**"), hereby files this *Motion to Dismiss Bankruptcy Case* (the "**Motion**") and, in support hereof, respectfully states as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Court**"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Veritex is still investigating whether venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409, and Veritex reserves all of its rights with respect thereto.

2.      This Motion seeks relief under sections 105(a) and 1112 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rule 1017 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and the Local Rules of this Court (the **"Local Rules"**).

## BACKGROUND

3.      On January 3, 2023 (the **"Petition Date"**), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is operating as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.  This Case was not previously converted to Chapter 11 from another chapter of the Bankruptcy Code.

4.      The Debtor designated this Case as a "single asset real estate" (or **"SARE"**) case on its Voluntary Petition [Dkt. #1], as defined in section 101(51B) of the Bankruptcy Code.  The Debtor's single asset real property is located at 50 Briar Hollow Lane, Houston, Texas 77027 (the **"Property"**).

5.      The Debtor filed its Bankruptcy Schedules [Dkt. #6] (the **"Schedules"**) and its Statement of Financial Affairs [Dkt. #7] (the **"SOFA"**) on January 17, 2023.

6.      Ali Choudhri is the 100% owner of the Debtor.  *See* SOFA, No. 28.

A.      **VERITEX'S FIRST-PRIORITY LIEN ON ALL OF DEBTOR'S ASSETS**

7.      On or about March 9, 2018, Veritex's predecessor in interest, Green Bank, N.A. (**"Green Bank"**), made a loan to the former owner of the Debtor's Property, BDFI, LLC (**"BDFI"**), in the original principal amount of $18,068,906.42 secured by a first-priority lien on the Property (the **"First-Lien Loan"**).  The First-Lien Loan is evidenced by, *inter alia*, (i) that certain Deed of Trust and Security Agreement attached hereto as **Exhibit A** between BDFI, as grantor, and Veritex, as beneficiary (the **"Deed of Trust"**), (ii) that certain UCC Financing Statement attached hereto as **Exhibit B** filed with the New York Secretary of State (the **"UCC-1"**), and (iii) that certain Promissory Note attached hereto as **Exhibit C** by BDFI, as maker, in favor of Green Bank, as payee (the **"Note,"**

and together with the Deed of Trust, UCC-1, and all other documents evidencing, securing, or related to the First-Lien Loan, the "**Loan Documents**").

8.      Green Bank properly perfected its first-lien interests in the Property by recording its Deed of Trust in the real property records of Harris County, Texas on or about August 9, 2018.  Green Bank properly filed the UCC-1 with the New York Secretary of State on or about March 12, 2018. BDFI is organized under the laws of the State of New York.

9.      On or about January 1, 2019, Green Bank merged with and into Veritex and Veritex became the holder in due course of all First-Lien Loan Documents, including Green Bank's first-lien Deed of Trust, as evidenced by the Certificate of Merger attached hereto as **Exhibit D**.[1]

10.     The First-Lien Loan originally matured on December 30, 2018.  The maturity date was extended through December 30, 2019 (the "**Maturity Date**") via two separate Modification, Renewal and Extension Agreements dated effective as of December 30, 2018, and March 30, 2019, respectively.

11.     Thereafter, Veritex and BDFI entered into numerous forbearance agreements for the Green Bank Loan, the first of which was dated April 30, 2020, and is attached hereto as **Exhibit E** (the "**First Forbearance Agreement**").  Less than a year later, a second forbearance agreement was entered dated April 26, 2021, which is attached hereto as **Exhibit F** (as subsequently amended and modified, the "**Second Forbearance Agreement**").  The parties then entered into four separate amendments of the Second Forbearance Agreement dated October 1, 2021, December 20, 2021, March 10, 2022, and June 15, 2022, which are attached hereto as **Exhibits F-1 thru F-4**, respectively.

12.     BDFI's forbearance period under the Second Forbearance Agreement, as extended by the Fourth Amendment thereto, expired at 5:00 p.m. CT on September 15, 2022.  Accordingly, the First-Lien Loan is matured, past due, and in default.

---

[1] The Debtor admits that Veritex is the successor to Green Bank in pleadings filed with the State Court in the Debtor's TRO Lawsuit, which is further discussed below.

**B.  DEBTOR'S ACQUISITION OF THE PROPERTY**

13.  Shortly after closing of the Green Bank Loan, BDFI borrowed approximately $8 million from the Debtor (the **"Second-Lien Loan"**) and, in connection therewith, executed that certain Second Lien Deed of Trust and Security Agreement granting the Debtor a second-priority lien on the Property (subject to Green Bank's first-lien Deed of Trust), which was recorded in the Real Property Records on or about December 20, 2018 [File No. RP-2018-568982] (the **"Second-Lien DOT"**).

14.  BDFI and the Debtor are both wholly owned and controlled by Ali Choudhri.[2]  *See* SOFA, No. 28.

15.  The Debtor foreclosed on its Second-Lien Loan late in 2022.  The Notice of Substitute Trustee's Sale was filed with the County Clerk of Harris County, Texas on September 12, 2022 [File No. FRCL-2022-4582], and the Property was sold at public auction on October 4, 2022.

16.  On October 21, 2022, Manfred Sternberg, as substitute trustee under the Second-Lien DOT, executed that certain Substitute Trustee's Deed and recorded the same in the Real Property Records [File No. RP-2022-519250], thereby vesting the Debtor with ownership of the Property, subject Veritex's first-lien Deed of Trust.

17.  Upon its foreclosure of the Second Lien Loan and acquisition of the Property, the Debtor succeeded to all of BDFI's obligations under the Green Bank Loan Documents.

**C.  VERITEX'S FORECLOSURE AND DEBTOR'S BANKRUPTCY FILING**

18.  On or about December 12, 2022, Veritex posted the Property for foreclosure by filing a Notice of Substitute Trustee's Sale with the County Clerk of Harris County, Texas [File No. FRCL-

---

[2] On or about June 15, 2015, BDFI provided Veritex with a *Certification Regarding Beneficial Owner and Controlling Person of Legal Entity Customers*, signed by Ali Choudhri, certifying that Ali Choudhri is the sole beneficial owner and controlling person of BDFI.

2022-6277]. As stated in the Notice, the Property was set to be sold at public auction on January 3, 2023, between the hours of 12:00 p.m. and 4:00 p.m., prevailing central time.

19. On the date of the scheduled foreclosure sale, the Debtor filed an Original Petition and Emergency Application for Temporary Restraining Order (a **"TRO"**) in the 125th Judicial District Court of Harris County, Texas (the **"State Court"**), commencing Cause No. 202300074 against Veritex (the **"TRO Lawsuit"**). A true and correct copy of the Debtor's Emergency Application for a TRO is attached hereto as **Exhibit G** (the **"TRO Application"**).

20. When the State Court denied the Debtor's request for a TRO, the Debtor immediately filed this Bankruptcy Case to stop Veritex's foreclosure. The Debtor's Voluntary Petition [Dkt. #1] was filed at 12:29 p.m. on January 3, 2023.

21. As of the Petition Date, the obligations due and owing to Veritex under the First-Lien Loan Documents total at least $19,959,093.75, as further set forth below and in the Payoff Statement attached hereto as **Exhibit H**:

| | |
|---|---|
| Unpaid Principal Balance: | $18,564,709.66 |
| Interest through 01/02/2023: | $1,307,930.12 |
| Late charges: | $5,307.10 |
| Total fees due (through 12/30/2022):[3] | $81,146.87 |
| **TOTAL AMOUNT DUE:** | **$19,959,093.75** |

## RELIEF REQUESTED

22. Veritex hereby requests that the Court enter an order dismissing this Bankruptcy Case, with prejudice, because the Case was not filed in good faith.

---

[3] The "Total fees due" line on the attached Payoff Statement consists of the legal fees incurred by Veritex through November 30, 2022, in the amount of $65,719.75. Veritex incurred an additional $15,427.30 of legal fees during the month of December, 2022, bringing the total fees to $81,146.87 through December 30, 2022.

## BASIS FOR RELIEF

### A.   LACK OF GOOD FAITH IN FILING BANKRUPTCY IS CAUSE FOR DISMISSAL

23.     Veritex seeks dismissal pursuant to section 1112(b)(1) of the Bankruptcy Code, which provides, in relevant part, as follows:

> [O]n request of a party in interest, and after notice and a hearing, **the court shall** convert a case under this chapter to a case under chapter 7 or **dismiss a case under this chapter**, whichever is in the best interests of creditors and the estate, **for cause**…

11 U.S.C. § 1112(b)(1)(emphasis added).

24.     Section 1112(b)(4) of the Bankruptcy Code contains a non-exhaustive list of what constitutes cause for dismissal.  11 U.S.C. § 1112(b)(4).  While a debtor's lack of good faith is not expressly included that list, Fifth Circuit authority is unequivocal that "[l]ack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b)." *Elmwood Dev. Co. v. Gen. Elec. Pension Trust (Matter of Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992); *see also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1071-72 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").

25.     As the Fifth Circuit explained in *Little Creek*, the good faith requirement "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." 779 F.2d at 1072. "Resort to the protection of the bankruptcy laws is not proper [if] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation…." *Id.* at 1073. Stated differently, "a Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose." *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270 (Bankr. N.D. Tex. 2021) (citing *Off. Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999)).

26.     Courts in this Circuit look to *Little Creek* as guiding authority in assessing whether a debtor's bankruptcy petition was filed in good faith. *See, e.g., Nat'l Rifle Ass'n of Am.*, 628 B.R. at 280 (citing *Little Creek* as "guidance on how courts should approach the good faith inquiry").  Specifically, courts examine the factors identified in *Little Creek* as being common indicia of a bad faith filing, which one bankruptcy court summarized as follows:

> (1) the debtor has one asset, which is a tract of real property;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
>
> (3) the debtor has few employees;
>
> (4) the property is the subject of a foreclosure action as a result of arrearages on the debt;
>
> (5) the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and
>
> (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re McMahan*, 481 B.R. 901, 916 (Bankr. S.D. Tex. 2012).  It should be noted that, while arguably subsumed within the foregoing factors, the *Little Creek* Court also identified the following as pertinent indicia of bad faith:

> (i) "little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;" and
>
> (ii) "[b]ankruptcy offers the only possibility of forestalling loss of the [debtor's] property."

*Little Creek*, 779 F.2d at 1072-73.

27.     These factors assist a court in conducting its "on-the-spot evaluation of a debtor's financial condition, motives, and the local financial realities" and determining whether the debtor's bankruptcy filing serves any valid purpose. *See Little Creek*, 779 F.2d at 1072; *Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270.  Importantly, "there is no requirement that all factors be present, and the Court may

place more weight on one factor than another." *McMahan*, 481 B.R. at 916) (citations omitted). "A collation of factors, rather than any single datum, controls resolution of the issue…, [and] the court must examine the facts and circumstances germane to each case." *Elmwood*, 964 F.2d at 510; *see also Little Creek*, 779 F.2d at 1072-73.

28. Again, the relevant overarching inquiry is whether the bankruptcy filing serves any valid purpose or presents any potential benefit to the creditors. *Id*; *Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270. Bankruptcy is intended to serve the best interests of a debtor's creditors, not the debtor itself. That is why section 1112(b) requires courts to dismiss a debtor's case if doing so "is in the best interests of *creditors* and the estate." *See* 11 U.S.C. § 1112(b) (emphasis added).

**B. ALL OF THE *LITTLE CREEK* FACTORS ARE PRESENT IN THIS CASE**

29. The *Little Creek* factors are the conditions most often present in cases where courts found the debtor to have filed bankruptcy in bad faith; *i.e.*, "recurring but non-exclusive patterns," not all of which need be present to find a lack of good faith. *Little Creek*, 779 F.2d at 1072. The Court actually notes that, typically, all of the conditions will **not** be present in a given case. *Id.* ("Several, **but not all**, of the following conditions usually exist.") (emphasis added).

30. The Court's determination is made easier in this Case, however, in that the Debtor has achieved the remarkable feat of checking off all of the *Little Creek* factors with a single bankruptcy filing. Each of the factors is briefly addressed as follows:

    a. **Factor 1 (single asset)**: The Debtor states in its Voluntary Petition [Dkt. #1] that this is a SARE Case, thus acknowledging that the Property is its only real asset.[4] The Debtor also

---

[4] The Bankruptcy Code defines single asset real estate as "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B).

admits in its TRO Application that Veritex's First-Lien Loan is secured by the Property. *See* **Ex. G**, p. 2.

b. **Factor 2 (few unsecured creditors)**: Veritex is the only creditor identified on the Creditor Matrix attached to the Debtor's Voluntary Petition. Moreover, the Debtor does not list a single unsecured claim on its Bankruptcy Schedules, thus solidifying the lack of any unsecured creditors in this Case. *See* SCHEDULES, p. 1, 14.

c. **Factor 3 (few employees)**: To Veritex's knowledge, the Debtor does not have any employees besides its principals. The fact that this Case has been pending for three weeks and the Debtor has not sought authority to pay any prepetition wages or use Veritex's cash collateral, standing alone, creates a presumption that the second *Little Creek* factor is satisfied. Further, the Debtor's Schedules do not mention any profit-sharing plan or pension made available by the Debtor as an employee benefit. *See* SCHEDULES, p. 8.

d. **Factor 4 (pending foreclosure)**: Veritex posted the Property for foreclosure on or about December 12, 2022. On January 3, 2023, the date of the foreclosure sale, the Debtor filed its TRO Application in the State Court in an effort to stop the foreclosure. When the State Court denied the TRO Application, the Debtor immediately filed this Bankruptcy Case.

e. **Factor 5 (two party dispute)**: The Debtor's filing of this Case is solely attributable to its dispute with Veritex, which is easily resolvable in the State Court. There is no indication that this Case was filed for any reason other than to stop Veritex's foreclosure. Not only *can* the dispute be resolved in State Court, it *was* in fact resolved by the State Court's denial of the Debtor's TRO Application. The Debtor only filed this Case because the State Court did not resolve the parties' dispute in the Debtor's favor.

f. **Factor 6 (intent to delay/frustrate secured creditors)**: Veritex posted the Property for foreclosure on December 12, 2022, with the foreclosure set to occur on January 3, 2023,

between the hours of 12:00 p.m. and 4:00 p.m. central time.  The Debtor filed its TRO Application early on the day of the scheduled foreclosure sale, and the State Court held a hearing on the requested TRO that morning.  The Debtor filed this Bankruptcy Case at 12:29 p.m. CT on January 3, 2023, immediately after the State Court denied its TRO Application.  Bankruptcy offered the only means of forestalling the Debtor's loss of the Property.

31.    Bankruptcy courts routinely find that chapter 11 cases filed to frustrate foreclosure proceedings should be dismissed for "cause" as being filed in bad faith.  *See, e.g., In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) (dismissing a chapter 11 case where the case was commenced on the eve of state foreclosure, the case was essentially a two-party dispute resolvable in the state court, there were few, if any, unsecured creditors, and where there was no reasonable prospect of reorganization and a liquidation of debtor's assets in bankruptcy would not produce any benefit not realizable outside of bankruptcy); *In re Gateway N. Estates, Inc.*, 165 B.R. 427 (E.D. Mich. 1994) (dismissing a chapter 11 case as not filed in good faith where debtor-holding company had no ongoing business and had no assets other than three parcel of undeveloped property, two of which were the subject of foreclosure proceedings); *In re Mark Enterprises, Inc.*, 142 B.R. 17 (Bankr. D.R.I. 1992) (dismissing a chapter 11 case filed fifteen minutes before a foreclosure sale of debtor's property absent a showing of reasonable possibility of successful reorganization within a reasonable time); *In re Chesmid Park Corp.*, 45 B.R. 153 (Bankr. E.D. Va. 1984) (determining that it was in the best interests of creditors to dismiss instead of convert to a case under chapter 7, a bankruptcy petition filed on the eve of foreclosure of a debtors sole asset after, in addition to other factors present, years of delay and delinquencies in payment); *In re Miracle Church of God in Christ*, 119 B.R. 308 (Bankr. M.D. Fla. 1990) (determining that a chapter 11 petition filed on the eve of a foreclosure sale was filed in bad faith where there was an absence of any unsecured creditors or nominal amount of unsecured debt).

32.     The Debtor's intent to frustrate and hinder Veritex's legitimate efforts to enforce its rights under the First-Lien Loan Documents could not be clearer, given the timing and circumstances surrounding the Debtor's bankruptcy filing.  To reiterate, the Property is the Debtor's only asset, and Veritex's First-Lien Loan is secured by the Property.  The Debtor filed this Case immediately after the State Court denied the Debtor's last minute request for a TRO halting the foreclosure.  The Debtor does not have any unsecured creditors.  To Veritex's knowledge, the Debtor does not have any employees, as it did not request to use Veritex's cash collateral and did not request authority to pay prepetition wages, and the Debtor's Schedules are devoid of any payments to employee benefit programs.

33.     The circumstances under which the Debtor filed this Case, standing alone, are sufficient under *Little Creek* to establish a prima facie showing of the Debtor's bad faith.  But on top of the factors enumerated in *Little Creek*, there is even more indicia of bad faith on the Debtor's part in this particular Case; namely, significant deterioration and deferred maintenance on the Property, and the fact that the Debtor's principal appears to have a history of leveraging bankruptcy to hinder state court litigation efforts, at least on one recent occasion.

## C.     ADDITIONAL INDICIA OF THE DEBTOR'S BAD FAITH

### i.     The Debtor has Allowed Significant Deterioration of the Property

34.     The Debtor has allowed the Property—Veritex's collateral—to significantly deteriorate in recent years, neglecting to perform routine maintenance and allowing major damage to the buildings to go unrepaired.  The damage and deferred maintenance is so bad, in fact, that the East Building[5] is vacant and abandoned, unfit for leasing to tenants.  The East Building flooded in 2019 when tropical storm Imelda hit Houston, causing significant damage to the building's elevator systems and rendering

---

[5] The Property consists of two buildings, the "East" and "West" Buildings, which sit on top of a single parking garage that connects and lies between the buildings.

the elevators inoperable, among other things. Veritex has even received reports of vagrants living in the East Building, with feces being found throughout the lobby area and around the parking garage. Additionally, there is believed to be significant structural damage to the Property's parking garage, including rusted beams, deterioration of concrete support columns, and stalagmites (indicating long-unaddressed water leaks).[6] Just a few days before this Case was filed, in fact, Veritex received a picture of a large overhead broken water pipe that was severed in the parking garage. *See* **Ex. I-4**.

35. The West Building on the Property, while at least habitable, is also in need of significant maintenance and repairs. At the time of the last Property Condition Assessment (PCA) conducted on the Property, in June 2020, the life safety and fire sprinkler systems for both buildings were past inspection, and the fire alarm control panels for the West Building were in need of immediate replacement. To Veritex's knowledge, neither of these issues has been addressed. Around August 24, 2022, Veritex received notice that the Houston Fire Marshal declared that the West Building was in violation of the Houston Fire Code.[7] Veritex was also recently made aware of a laundry list of complaints and maintenance requests from the West Building's largest tenant, GEICO, dating back to 2017, including, without limitation, numerous complaints of HVAC issues, flooded or out-of-order restroom facilities, inadequate building security and theft, and inoperable elevators (including instances of tenants being trapped in the elevators).

### ii. The Debtor's Principal, Mr. Ali Choudri, Appears to Have a History of Using Bankruptcy to Frustrate State Court Litigation Efforts

36. The Debtor's principal and sole owner, Ali Choudhri, appears to have leveraged the bankruptcy process to frustrate state court litigation against an entity that he owns on at least one occasion in the past. The Debtor's Voluntary Petition [Dkt. #1] identifies Houston Real Estate

---

[6] Attached hereto as **Exhibits I-1 through I-4** are a sample of pictures illustrating the damage to the parking garage, which were taken around June, 2020, in connection with the Property Condition Assessment conducted by Consolidated Consulting Group, LLC in June 2020 (the **"PCA"**).

[7] Attached hereto as **Exhibit I-5** is a picture of the Fire Marshal's violation notice placed on the building.

---

Properties, LLC ("**HREP**") as an affiliate of the Debtor that recently filed bankruptcy in the Southern District of Texas, Houston Division, on October 7, 2022 [Case No. 22-32998].[8] HREP's corporate ownership statement [Case No. 22-329988, Dkt. #31] identifies Ali Choudhri as owning 80% of the equity in the company. According to the pleadings filed in the case, HREP's bankruptcy was filed on circumstances nearly identical to this Case. More specifically, HREP's bankruptcy stems from a Harris County lawsuit—which was filed over nine years ago—by Osama Abdullatif and Abdullatif & Company, LLC (together, "**Abdullatif**") against HREP and Ali, individually. After nine years of litigation, Abdullatif finally obtained a jury verdict against HREP and Ali in or about September, 2022, and Abdullatif's motion for entry of final judgment based on the jury verdict was set for hearing on Friday, October 7, 2022. Similar to the Debtor's last minute request for a TRO against Veritex, HREP and Ali filed a Motion for New Trial with the state court late on October 6, 2022, and HREP filed bankruptcy the next day prior to the hearing.

## D. THE DEBTOR CANNOT CARRY ITS BURDEN TO PRECLUDE DISMISSAL OF THIS CASE

37. Once a movant satisfies its initial burden of making a prima facie showing of bad faith in filing, the burden shifts to the debtor to demonstrate good faith. *Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270 (citing *In re Mirant Corp.*, 2005 WL 2148362, at *7 n.20 (Bankr. N.D. Tex. Jan. 26, 2005); *In re Sherwood Enters., Inc.*, 112 B.R. 165, 170-71 (Bankr. S.D. Tex. 1989)). Since the undisputed facts of this Case establish a prima facie showing of the Debtor's bad faith, the Debtor must satisfy the "unusual circumstances" test for precluding avoidance under Section 1112(b)(2).

38. Section 1112(b)(2) of the Bankruptcy Code precludes a court from dismissing a debtor's case if each of the following conditions are met:

---

[8] Veritex requests that the Court take judicial notice of all pleadings, orders, claims, reports, and any other documents filed in HREP's bankruptcy case [Case No. 22-32998] and in any adversary proceedings or other cases related thereto, including Adversary Proceeding No. 22-03298 and Adversary Proceeding No. 22-03326.

(1) the court finds and specifically identifies "unusual circumstances" establishing that dismissal is not in the best interests of creditors and the estate;

(2) the debtor establishes that there is a reasonable likelihood of confirming a plan within a reasonable period of time;

(3) the debtor establishes that it had **reasonable justification** for its acts or omissions; **and**

(4) the debtor establishes that its acts or omissions will be cured within a reasonable period of time fixed by the court.

39.     11 U.S.C. § 1112(b)(2) (emphasis added); *see also In re Zamora-Quezada*, 622 B.R. 865, 880 (Bankr. S.D. Tex. 2017). Because bad faith is, by definition, not justifiable, the Debtor cannot satisfy section 1112(b)(2) without first rebutting the plethora of prima facie evidence against it and demonstrating that this Case was in fact filed in good faith—which it simply cannot do.

## CONCLUSION

40.     Only one conclusion can be drawn from the facts of this Case: the Debtor filed bankruptcy for the sole purpose of frustrating Veritex's legitimate, lawful efforts to exercise its rights under the First-Lien Loan Documents. The Debtor has no other creditors to benefit from this Case. There is only Veritex. The Debtor has no assets aside from the Property, no employees, and no going concern value. Moreover, the Debtor's principal has a clear history of leveraging the bankruptcy process to forestall his entities' loss of property following unfavorable outcomes in state court, just as was done in this Case.

## PRAYER

WHEREFORE, for the foregoing reasons, Veritex respectfully requests that the Court grant this Motion and enter an order dismissing this Bankruptcy Case and granting Veritex such other and further relief to which it is justly entitled.

DATED: January 26, 2023

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Joseph M. Coleman*

    **Joseph M. Coleman**
    State Bar No. 04566100
    **Kyle Woodard**
    State Bar No. 24102661
    **JaKayla DaBera**
    State Bar No. 24129114
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
Email: jcoleman@krcl.com
Email: kwoodard@krcl.com
Email: jdabera@krcl.com

**ATTORNEYS FOR VERITEX COMMUNITY BANK**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 26, 2023, a true and correct copy of the foregoing Motion was filed with the Court and served (i) via the Court's electronic case filing system (ECF) upon all parties receiving such service in this bankruptcy case, and (ii) via email and/or first-class U.S. mail, postage prepaid, upon the following parties and all other parties listed on the attached Service List.

Galleria West Loop Investments, LLC
5900 Balcones Drive, Suite 100
Austin, TX 78731

Galleria West Loop Investments, LLC
50 Briar Hollow
Houston, TX 77027

U.S. Bankruptcy Court
615 E. Houston Street, Room 597
San Antonio, TX 78205-2055

Ron Satija
Hayward PLLC
7600 Burnet Road, Suite 530
Austin, TX 78757
Email: rsatija@haywardfirm.com

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78295-1601

*/s/ Joseph M. Coleman*
Joseph M. Coleman