# Exhibit E

**First Forbearance Agreement**

## FORBEARANCE AGREEMENT

This Forbearance Agreement ("Agreement") is made and entered into effective as of April 3, 2020 ("Effective Date"), by and among BDFI LLC ("Borrower") and Veritex Community Bank as successor in interest to Green Bank, N.A. ("Lender") (collectively, the "Parties").

### RECITALS

A.      On March 9, 2018, Borrower executed and entered into a Promissory Note (the "Note"), Loan Agreement (the "Loan Agreement"), a Deed of Trust and Security Agreement (the "Deed of Trust"), a Security Agreement and Uniform Commercial Code - Financing Statement - UCC 1 (the "Security Agreement"), and miscellaneous other loan documents (collectively, the "Loan Documents") in favor of Lender. The Note was renewed, modified, and/or extended effective as of December 30, 2018 and March 30, 2019. ·

B.      The Stated Rate of interest under the Loan Documents is Prime plus 0.5% (the "Stated Rate").

C.      The Note matured on December 30, 2019 (the "Maturity Date"). Interest is accruing at the post-maturity rate of 12% (the "Default Rate").

D.      Borrower defaulted under the terms of the Loan Documents by: (1) failing to pay the Note upon the Maturity Date; (2) failing to pay the 2019 ad valorem taxes when due and payable; and (3) allowing a tax lien to be recorded in connection with a tax loan from Caz Creek TX II, LLC (the "Tax Loan") (collectively, the "Existing Events of Default").

E.      The Parties agree and acknowledge that the outstanding principal balance of the Note is $18,654,938.39, and accrued interest is $363,771.30 for the period commencing on November 29, 2019 through April 24, 2020 (the "Accrued Interest").

F.      Borrower has authorized and directed Lender to negotiate directly with Ali Choudhri ("Choudhri") regarding the Note, the Existing Events of Default, and this Agreement.

H.      Borrower has requested that Lender temporary forbear from exercising certain rights and remedies to which Lender is entitled under the Loan Documents as a result of the Existing Events of Default for the consideration stated below.

I.      Lender has agreed, subject to the terms and conditions set forth in this Agreement, to forbear enforcement of certain rights under the Loan Documents as a result of the Existing Events of Default until December 30, 2020 subject to the terms set forth below.

**NOW, THEREFORE**, in consideration of the foregoing promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree as follows:

1.      Incorporation of Recitals. The foregoing recitals are acknowledged by the Parties to be true and correct and are incorporated by reference for all purposes.

2.    Acknowledgment.  Borrower agrees, confirms, and acknowledges that (a) the occurrence of the Existing Events of Default set forth in Recital D above constitute a default under the Loan Documents; (b) that the entire amount of the Note is due and owing by Borrower to Lender; (c) Borrower has no defenses to repayment of the Note; (d) if Borrower has any defense to repayment of the Note, Borrower hereby waives any and all such defenses; (e) Lender is entitled to exercise any and all of its rights under the Loan Documents due to the occurrence of such Existing Events of Default; and (f) there are no setoffs, counterclaims, or defenses to the payment of the Loans, the performance of the Loan Documents by Borrower, or Lender's right to exercise any and all of its rights under the Loan Documents.

3.    Borrower's Obligations.

(a)    Initial Payment.  On the Effective Date, Borrower will make a payment in the amount of $46,000.00 to Lender to be applied to Accrued Interest.

(b)    Monthly Interest Payments.  Beginning 75 days after the Harris County Stay Home – Work Safe Order is no longer in effect, Borrower will make monthly interest payments at a rate of 2% (the "Pay Rate") on or before the 30th day of each month during the Forbearance Period (as defined below).  However, the difference between the Stated Rate and the Pay Rate will be added to the outstanding principal balance of the Loan and will be due at the end of the Forbearance Period.

(c)    Personal Guaranty.  Choudhri will personally guaranty payment of the balance of the Accrued Interest at the Pay Rate in the amount of $105,312.28.

(d)    Tax Loans.  Borrower will make all payments on the Tax Loan as they become due, and, no later than December 31, 2020, will pay off the Tax Loan and furnish to Lender proof of the full payment and release of liens.  In addition, Borrower will not incur any additional tax loans during the Forbearance Period.

(e)    Payment in Full.  Borrower will pay off the Note in full on or before December 30, 2020.

4.    Forbearance.  In consideration of the covenants and agreements of Borrower set forth in this Agreement, and in reliance upon the representations, warranties, statements and agreements of Borrower set forth in this Agreement (but expressly conditioned upon proof of Borrower's performance of the Obligations under Paragraph 3 above, Lender hereby agrees to forbear from exercising any of its remedies under the Loan Documents, including, without limitation, posting the mortgaged property described in the Deed of Trust for foreclosure, until the earlier of: (i) January 1, 2021, (ii) payment in full of all amounts due under the Note, or (iii) Borrower's "Default" (as defined below) under this Agreement (the "Forbearance Period"), subject to the terms and conditions hereof.  Lender's agreement is limited to that expressly set forth in the preceding sentence, and no other or additional agreement by Lender shall be implied herefrom. Nothing in this Agreement shall constitute a release or a waiver by Lender of any of its rights or remedies under the Loan Documents upon or after any Default under this Agreement or the expiration of the Forbearance Period. Furthermore, Lender agrees that, for as long as a Default has

not occurred under this the Agreement, Lender will not market or seek to sell the Note, other than to a designee of Borrower.

5.  Interest. Interest on the debt due under the Note will continue to accrue at the Default Rate under the Note. However, provided the Note is paid off during the Forbearance Period and there has not been an instance of default ("Default") under this Agreement or the Loan Documents (other than the Existing Events of Default), then any accrued interest in excess of the Stated Rate will be forgiven and Borrower may retire its interest obligations to Lender at the Stated Rated as defined in the Loan Documents.

6.  Default. As used in this Agreement, "Default" means the occurrence of any of the following:

a.  Borrower fails to perform or complete any of the covenants or agreements provided in this Agreement; or

b.  Any representation, warranty, statement or agreement made by Borrower pursuant to this Agreement shall prove to have been false or misleading in any material respect on and as of the date when made.

The Forbearance Period shall be deemed to have terminated (a) immediately upon Borrower's failure to pay any amounts due under this Agreement or (b) upon Borrower's failure to cure any non-monetary Default within seven days of receipt of notice of such Default. Upon the occurrence of any Default, subject to the seven-day cure period for a non-monetary default, Lender shall have all rights and remedies provided under applicable law and/or the Loan Documents, and Lender's obligations under Section 4 of this Agreement shall automatically terminate.

7.  No Modification. Except as expressly set forth herein, this Agreement shall not be construed to waive or modify any of the Loan Documents nor any of the rights of Lender thereunder, nor any of the obligations of Borrower thereunder. Rather, this Agreement, insofar as Lender's obligations are concerned, shall be construed solely as the agreement of Lender to forbear the exercise of certain of its rights under the Loan Documents for the period, and subject to the terms and conditions, herein specified. Except as expressly set forth herein, Borrower and Lender hereby agree that the liens, and all other rights, benefits and privileges of Lender pursuant to the Loan Documents, are hereby ratified and confirmed, and are not waived, and that all terms of the Loan Documents are and shall remain in full force and effect.

8.  Continuation of Existing Event of Default. Borrower expressly stipulates and agrees that the execution of this Agreement does not constitute a cure of the prior Existing Events of Default by Borrower under the Loan Documents and that after giving effect to this Agreement (i) Borrower remains in default of its obligations under the Loans Documents, and (ii) the Note remains due and owing.

9.  Provision of Financial Information. Borrower agrees to provide to Lender such financial information as Lender may reasonably request from time to time, during the term of this Agreement including, but not limited to, financial statements, statements of the sources and uses of Borrower's funds, tax returns, and monthly updates of efforts to refinance the Note.

521550.000001 23303131.2                    3

10.    Release of Claims. BORROWER, ITS AGENTS, EMPLOYEES, SUCCESSORS, AFFILIATES, AND ASSIGNS (THE "RELEASING PARTIES") HEREBY VOLUNTARILY AND KNOWINGLY RELEASE AND FOREVER DISCHARGE LENDER, ITS ATTORNEYS, AGENTS, EMPLOYEES, SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES"), FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, WHICH THE RELEASING PARTIES HAVE, MAY HAVE OR WHICH MAY ARISE IN THE FUTURE AGAINST THE RELEASED PARTIES, IF ANY, INCLUDING, BUT NOT LIMITED TO, CLAIMS ARISING OUT OF (I) CONTRACT, TORT, VIOLATION OF LAW, STATUTE, OR REGULATIONS, OR OTHERWISE, (II) THE LOANS REPRESENTED BY THE NOTE, (III) ANY ACTION OR INACTION ON THE PART OF LENDER WITH RESPECT TO THE LOAN REPRESENTED BY THE NOTE, (IV) ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE, (V) THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS, OR (VI) THE NEGOTIATION, EXECUTION OR DELIVERY OF THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS.

11.    No Waiver. No waiver of any Default hereunder or under the Loan Documents shall be deemed to be a waiver of any other Default. No failure to exercise or delay in exercising any of Lender's rights or remedies shall operate as a waiver thereof, nor shall any single or partial exercise of any rights of Lender preclude any further or other exercise thereof or the exercise of any other rights of Lender. All rights and remedies of Lender hereunder and under the Loan Documents are cumulative.

12.    Representations. Borrower represents and warrants that the execution and delivery of this Agreement has been duly authorized and is a valid and binding obligation of Borrower. Choudhri, individually and on behalf of Borrower, represents and warrants that he has full authority to execute this Agreement on behalf of Borrower.

13.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the United States of America.

14.    Parties Bound. This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors, assigns, heirs and legal representatives; provided, however, that Borrower may not assign any of its rights or obligations hereunder, and any attempted assignment without such consent shall be null and void.

15.    Counterparts. This Agreement may be executed in several identical counterparts, and by the parties hereto on separate counterparts, and each counterpart, when so executed and delivered, shall constitute an original instrument, and all such separate counterparts shall constitute but one and the same instrument.

16.    Captions. The headings and captions appearing in this Agreement have been included solely for convenience and shall be afforded no meaning in construing this Agreement.

521550.000001 23303131.2                          4

**Exhibit E                                    4/10**

17.    Miscellaneous. This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior conflicting or inconsistent agreements, consents and understandings, if any, relating to such subject matter. Borrower acknowledges and agrees that there are no oral agreements by Lender or any of its affiliates related to the Loan Documents which have not been incorporated in this Agreement. Whenever the term "including" is used in this Agreement, it means "including by way of example only and without limitation." Time shall be of the essence of the performance of the parties' obligations under this Agreement.

THIS AGREEMENT AND THE LOAN DOCUMENTS TOGETHER CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF A PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.

IN WITNESS WHEREOF, the parties hereto have each executed this Agreement as of the Effective Date.

**LENDER:**

**VERITEX COMMUNITY BANK**

By:_____

Name: Michael Carp

Title:   Executive Vice President—Director of
          Special Assets

**BORROWER:**

**BDFI LLC**

By:_____

Name: Ali Choudhri

Title:   Authorized Agent for Borrower

521550.000001 23303131.2                     5

**Exhibit E**                                                    **5/10**

## LIMITED GUARANTY

This LIMITED GUARANTY ("Guaranty") is made this 30 day of April , 2020, by ALI CHOUDHRI (the "Guarantor"), in favor of VERITEX COMMUNITY BANK ("Lender") in connection with and as an express condition to a Forbearance Agreement (the "Forbearance Agreement") between and BDFI LLC ("Borrower") executed contemporaneously with this Guaranty.

## RECITALS

A. On March 9, 2018, Borrower executed and entered into a Promissory Note (the "Note"), Loan Agreement (the "Loan Agreement"), a Deed of Trust and Security Agreement (the "Deed of Trust"), a Security Agreement and Uniform Commercial Code - Financing Statement - UCC 1 (the "Security Agreement"), and miscellaneous other loan documents (collectively, the "Loan Documents") in favor of Lender. The Note was renewed, modified, and/or extended effective as of December 30, 2018 and March 30, 2019. The Note matured on December 30, 2019 (the "Maturity Date").

B. Borrower defaulted under the terms of the Loan Documents by: (1) failing to pay the Note upon the Maturity Date; (2) failing to pay the 2019 ad valorem taxes when due and payable; and (3) allowing a tax lien to be recorded in connection with a tax loan from Caz Creek TX II, LLC (collectively, the "Existing Events of Default").

C. The outstanding principal balance of the Note is $18,654,938.39 and accrued interest as of April 24, 2020 is $363,771.30.

D. Guarantor was authorized by Borrower to negotiate with Lender regarding the BDFI Loan, the Existing Events of Default, and the Forbearance Agreement and desires that Lender temporary forbear from exercising certain rights and remedies to which Lender is entitled as a result of the Existing Events of Default.

E. Lender has agreed, subject to the terms and conditions set forth in the Forbearance Agreement, to forbear enforcement of certain rights to which Lender is entitled as a result of the Existing Events of Default until December 30, 2020 (the "Forbearance Period").

F. As consideration for the Forbearance Agreement, Lender requires that Guarantor execute this Guaranty for $105,312.28 of the total amount owed Lender by Borrower (the "Guaranteed Indebtedness").

## CLAUSES AND COVENANTS

1. Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender the full, faithful and prompt performance of Borrower's obligation to pay to Lender the Guaranteed Indebtedness in the amount of $105,312.28 at the end of the Forbearance Period.

2. Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Interest and in collecting or bringing suit to collect the Guaranteed Interest; (b) all rights of Guarantor under chapter 43 of the Texas Civil Practice and Remedies Code, section

**Exhibit E**                    **6/10**

17.001 of the Texas Civil Practice and Remedies Code, rule 31 of the Texas Rules of Civil Procedure, and sections 51.003, 51.004, and 51.005 of the Texas Property Code; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this Guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

3.      Guarantor agrees to pay reasonable attorney's fees and other collection costs if an attorney is retained to enforce this Guaranty for collection.

4.      This Guaranty is an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection.

5.      Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right. Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

6.      Guarantor consents and acknowledges that Guarantor's obligations will not be released by (a) the renewal, extension, or modification of the Guaranteed Indebtedness or any of the Loan Documents; (b) the insolvency, bankruptcy, liquidation, or dissolution of Borrower or any other obligor; (c) the failure of Lender to properly obtain, perfect, or preserve any security interest or lien in any collateral for the Guaranteed Indebtedness; (d) the release, substitution, or addition of any collateral for the Guaranteed Indebtedness; or (e) the failure of Lender to exercise diligence, commercial reasonableness, or reasonable care in the preservation, enforcement, or sale of any of the collateral.

7.      Lender need not notify Guarantor that Lender has sued Borrower, but if Lender gives written notice to Guarantor that it has sued Borrower, Guarantor will be bound by any judgment or decree, to the extent permitted by law.

8.      Lender may sue any guarantor without impairing Lender's rights against any other guarantor, with or without making Borrower a party. Lender may settle with Borrower or any other guarantor for such amounts as it may elect or may release Borrower or any guarantor or any collateral securing the Guaranteed Indebtedness without impairing Lender's right to collect the Guaranteed Indebtedness from Guarantor.

9.   This Guaranty binds Guarantor and Guarantor's heirs, successors, and assigns, and it benefits and may be enforced by Lender and Lender's successors in interest.  When the context requires, singular nouns and pronouns include the plural.  This guaranty will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.  The provisions of this Guaranty are severable.  If a court of competent jurisdiction finds that any provision of this Guaranty is unenforceable, then the remaining provisions will remain in effect without the unenforceable parts.

10.   Lender may, without notice, assign this Guaranty in whole or in part and no assignment or transfer of the Agreement shall operate to extinguish or diminish the liability of the Guarantor hereunder.

11.   Guarantor represents and warrants to Lender that: (i) the execution and delivery of this Guaranty has been duly authorized by Guarantor and constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (ii) the making of this Guaranty does not require any further action by Guarantor; and (iii) Borrower is an entity at least partially owned and controlled by Guarantor.  Guarantor hereby acknowledges and agrees that the Forbearance Agreement between Lender and Borrower is a direct material benefit to Guarantor, and that Lender would not enter into the Agreement without the benefit of this Guaranty.  Guarantor warrants that he has had the opportunity to review this Guaranty with counsel.

12.   GUARANTOR HEREBY VOLUNTARILY, KNOWINGLY, AND UNCONDITIONALLY RELEASES, ACQUITS, AND FOREVER DISCHARGES LENDER, ITS ATTORNEYS, AGENTS, EMPLOYEES, SUCCESSORS, AFFILIATES, AND ASSIGNS (COLLECTIVELY, THE "RELEASED PARTIES"), FROM ANY AND ALL POSSIBLE LIABILITIES, CLAIMS, DEMANDS, DAMAGES, COSTS, EXPENSES, ACTIONS, OR CAUSES OF ACTION OF ANY KIND OR NATURE (IF THERE BE ANY), WHETHER ABSOLUTE, CONDITIONAL OR CONTINGENT, DISPUTED OR UNDISPUTED, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, KNOWN OR UNKNOWN, AT LAW OR IN EQUITY, WHICH GUARANTOR HAS, MAY HAVE, OR WHICH MAY ARISE IN THE FUTURE AGAINST THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, ANY SUCH LIABILITIES, CLAIMS, DEMANDS, DAMAGES, EXPENSES, ACTIONS, OR CAUSES OF ACTION ARISING OUT OF OR RELATING TO A CLAIM OF BREACH OF CONTRACT, FRAUD, LENDER LIABILITY OR MISCONDUCT, BREACH OF FIDUCIARY DUTY, USURY, UNFAIR BARGAINING POSITION, UNCONSCIONABILITY, VIOLATION OF LAW, NEGLIGENCE, ERROR OR OMISSION IN ACCOUNTING OR CALCULATIONS, MISAPPROPRIATION OF FUNDS, TORTIOUS CONDUCT, OR RECKLESS OR WILLFUL MISCONDUCT.

13.   THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Guarantor, intending to be legally bound hereby, has caused this Guaranty to be executed and delivered as of the date first written above.

By: _____

Name:  Ali Choudhri

SUBSCRIBED AND SWORN TO BEFORE ME on this the 30 day of April 2020.

_____

Notary Public in and for the
State of Texas

STEPHANIE ALVAREZ
Notary Public, State of Texas
Comm. Expires 04-06-2021
Notary ID 131078509

Attn: Veritex Bank

I, Ali Choudhri, attest that:

I. "The transfer of ownership interest as required by the agency agreement and termination notice have occurred.

II. I, Ali Choudhri have not entered into any subsequent agreement agency in reference to BDFI, LLC., with any other individual.

Ali Choudhri

**Exhibit E**      **10/10**