# Exhibit F

**Second Forbearance Agreement**

## SECOND FORBEARANCE AGREEMENT

This SECOND FORBEARANCE AGREEMENT (the "Agreement") is made and entered into effective as of April 26, 2021 ("Effective Date"), by and among BDFI LLC, a New York limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Veritex Community Bank, a Texas state bank ("Lender"), successor in interest by merger to Green Bank, N.A., a national banking association ("Original Lender").

### RECITALS

A.      The Borrower is the borrower under that certain loan from Lender evidenced and secured by, among other documents, the following described loan documents (collectively, the "Loan Documents"):

(i)      that certain promissory note dated March 9, 2018, made by Borrower, in favor of Original Lender, in the original principal amount of $18,068,906.42 (the "Note"), advanced pursuant to that certain loan agreement executed by Borrower and Original Lender, dated March 9, 2018 (the "Original Loan Agreement"), as modified by that certain Modification, Renewal and Extension Agreement, dated effective December 30, 2018, and recorded under Document No. 2019-16298 of the Real Property Records of Harris County, Texas (the "Records") (the "First Modification Agreement"), as further modified by that certain Second Modification, Renewal and Extension Agreement, dated effective March 30, 2019, and recorded under Document No. 2019-187972 of the Records (the "Second Modification Agreement"; and the Original Loan Agreement as modified by the First Modification Agreement and the Second Modification Agreement is hereinafter referred to as the "Loan Agreement"), and secured by, among other things, that certain deed of trust and security agreement (the "Deed of Trust"), dated August 8, 2018, executed by Borrower for the benefit of Original Lender and recorded as Document No. 2018-362993 in the Records, encumbering the Property (as described and defined therein) and that certain Security Agreement and Uniform Commercial Code – Financing Statement–UCC1 executed by Borrower in favor of Original Lender (the "Security Agreement");

(ii)      that certain limited guaranty, dated April 30, 2020, executed by Guarantor for the benefit of Lender guarantying payment of the balance of the Accrued Interest at the pay rate in the amount of $105,312.28 (the "Guaranty");

(iii)      that certain forbearance, dated April 30, 2020, executed by Borrower and Lender (the "First Forbearance Agreement");

B.      Lender is the successor to Original Bank by merger and is the holder and owner of the Note and other Loan Documents and indebtedness evidenced by the Note and Loan Documents (the "Loan").

**Exhibit F**                                                  **1/57**

C.     The Existing Events of Default (as defined in the First Forbearance Agreement) have not been cured by Borrower and still exist as Events of Default (as defined in the Loan Agreement) under the Loan Documents as of the date hereof. The Existing Events of Default shall now also include the liens and encumbrances filed against the Property listed on the title report attached hereto as Exhibit A (the "Title Report") and a lien for broker's commissions filed by NAI, all of which, other than the second lien loan expressly permitted by the Loan Documents, were not in existence on the date the Loan originally closed (collectively, the "New Liens and Encumbrances").

D.     Additionally, Borrower has failed to observe and perform Borrower's obligations under Sections 3(d) and (e) of the First Forbearance Agreement (the "Section 3(d) and (e) Obligations").

E.     The Forbearance Period (as defined in the First Forbearance Agreement) has expired and Lender is, as of the date of this Agreement, no longer prohibited from (x) marketing or seeking to sell the Note or (y) exercising and/or seeking enforcement of any or all of its rights and remedies under the Loan Documents, at law and/or in equity. Such rights and remedies in clause (y) immediately preceding include, but are not limited to, the right to (i) accelerate the Loan, (ii) bring an action against Borrower for all sums due under the Note and Loan Documents, (iii) bring an action against the Guarantor for all sums due under the Guaranty, and/or (iv) foreclosure of the Property and other collateral secured by the liens and security interests created under the Deed of Trust and/or the Security Agreement (collectively, the "Lender's Enforcement Rights"), and Borrower and Guarantor agree that Borrower and Guarantor have no defenses, offsets or counterclaims to the exercise of such rights and remedies.

F.     Borrower has requested that Lender forbear in enforcing its rights and remedies until the end of the Second Forbearance Period (as defined below) and from marketing or seeking to sell the Note through September 30, 2021 so that Borrower may have additional time to cure all Existing Events of Default, the Section 3(d) and (e) Obligations and perform the obligations set forth in this Agreement.

G.     In consideration of Lender's agreement to further forbear, pursuant to the terms set forth in this Agreement, the Borrower and Guarantor (collectively, the "Borrower Parties" and each individually, a "Borrower Party") have executed this Agreement and provided certain information and confirmations to Lender.

H.     Lender is willing, from the date of this Agreement until the Second Forbearance Termination Time, to forbear from exercising Lender's Enforcement Rights.

8300289 v10 (70859.00050.000)

**Exhibit F**                                               **2/57**

## AGREEMENT

In consideration of the Recitals and of the mutual promises and covenants contained herein, Lender, Borrower and Guarantor agree as follows:

1.      Agreement to Forbear During the period commencing on the date hereof and ending on the earlier to occur of 5:00 p.m. Dallas, Texas time on October 15, 2021 (the "Second Forbearance Termination Time"), or the date that any Forbearance Default (as defined in Section 11 hereof) occurs (herein collectively, the "Second Forbearance Period"), and subject to the other terms and conditions of this Agreement, Lender agrees that with respect to the Existing Events of Default and Section 3(d) and (e) Obligations, it will forbear from (w) exercising Lender's Enforcement Rights and (x) marketing or selling the Note and Loan to a third party. Upon the expiration or termination of the Second Forbearance Period, Lender's forbearance shall automatically terminate and Lender shall be entitled to: (y) exercise any and all of Lender's rights and remedies under this Agreement, under any other Loan Documents and/or at law or in equity without further notice of any type or nature, including, but not limited to, Lender's Enforcement Rights and (z) market and sell the Note and Loan to a third party. Borrower and Guarantor agree that Lender shall have no obligation to extend the Second Forbearance Period. Nothing contained herein shall be construed or deemed to be a waiver of Lender's rights under any of the Loan Documents.

2.      Borrower and Guarantor Acknowledgments and Agreements. As of the date of this Agreement Borrower and Guarantor acknowledge and agree that the following are true and correct:

(a)      The Recitals contained in the First Forbearance Agreement and the Recitals set forth above in this Agreement are true and correct and all such recitals are incorporated herein by reference for all purposes.

(b)      Borrower has not cured the Existing Events of Default or performed the Section 3(d) and (e) Obligations and the First Forbearance Period has expired and is no longer in effect.

(c)      The principal amount of the Note was modified in the Second Modification Agreement to equal $18,655,586.15 and the outstanding principal balance of the Loan as of April 21, 2021 equals $18,771,013.57.

(d)      The accrued and outstanding interest on the Note, including interest at the Default Rate (as defined in the First Forbearance Agreement), as of April 21, 2021 equals $742,107.38.

8300289 v10 (70859.00050.000)

(e)     The Deed of Trust secures payment of the Loan and encumbers the Property with a first mortgage lien in favor of Lender.

3.     Modification of Payments Under the Note. Borrower, Guarantor and Lender agree, subject to the terms of Section 4 immediately below, that the monthly scheduled principal and interest payments due and payable under the Note for the months January 2021 through and including October 2021 are hereby amended, modified and restructured as follows:

(a)     Interest Payments. Interest on the Loan due under the Note will continue to accrue at the Default Rate and Borrower will make monthly interest payments at the Pay Rate (as defined in the First Forbearance Agreement) on or before the 30th day of each calendar month during the Second Forbearance Period; provided for the month of October 2021 such payment will be made on October 15, 2021, and the difference between the Stated Rate (as defined in the Note) and the Pay Rate will be added to the outstanding principal balance of the Note and will be due at the end of the Second Forbearance Period. However, provided that the Note is paid in full on or prior to the expiration of the Second Forbearance Period and there shall not then exist a Forbearance Default (as defined below) under this Agreement-or any new Event of Default under the Loan Documents (other than the Existing Events of Default), then any accrued interest in excess of the Stated Rate will be forgiven and Borrower may retire its interest obligations to Lender at the Stated Rate (the terms of this last sentence of Section 3(a) being herein referred to as the "Default Interest Forgiveness Provision; provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement, Borrower, shall be entitled to the lesser of (x) a thirty (30) day cure period after receipt of notice from Lender or (y) any cure period that is already set forth in the Loan Documents that is applicable to such non-monetary default.

(b)     Tax Loans. Borrower shall pay all payments on the Tax Loan (as defined in the First Forbearance Agreement) and a second tax loan obtained by Borrower from Caz Creek TX II, LLC in a consolidated aggregate amount of $1,090,831.36 (the "Second Tax Loan") as and when they become due and payable and furnish to Lender proof, acceptable to Lender, of the payment in full of the Tax Loan and Second Tax Loan payments. Borrower also agrees it shall not obtain any future tax loan and shall pay all property taxes due and payable with respect to the Property before they become delinquent, including, but not limited to, all real property taxes against the Property for calendar year 2021.

(c)     Payment in Full. Borrower shall pay all amounts outstanding under the Loan, including but not limited to, all principal and interest due under the Note, on or before the expiration of the Second Forbearance Period; provided, however,

8300289 v10 (70859.00050.000)

**Exhibit F**                                                    **4/57**

if on or prior to September 30, 2021 Borrower has made all payments required under the Loan Documents as modified by the First Forbearance Agreement and this Agreement and there shall exist-no new Event of Default that under the Loan Documents and no Forbearance Default under this Agreement, then at such time, Borrower shall be entitled to obtain a full pay off of the Loan for the aggregate amount of (i) the then existing unpaid principal balance of the Note plus (ii) all accrued and unpaid interest at the Stated Rate minus (iii) the amount of $4,900,000.00 (the terms of the immediately preceding proviso in this Section 3(c) being herein referred to as the "Principal Forgiveness Provision"); provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement [Borrower's bankruptcy], Borrower, shall be entitled to the lesser of (x) a thirty (30) day cure period after receipt of notice from Lender or (y) any cure period that is already set forth in the Loan Documents that is applicable to such non-monetary default.

(d)     <u>Amendment of Guaranty.</u> Borrower and Guarantor acknowledge that (i) the filing of the New Liens and Encumbrances in the real property records of Harris County, Texas constitute Events of Default as defined in the Loan Documents, has caused Lender to incur substantial risk contrary to the express agreements by Borrower in the Loan Documents. Borrower and Guarantor, in consideration for Lender incurring such risk, agree that the Guaranty is hereby amended and modified so that Section 1 of the Guaranty is amended, modified and restated in its entirety to read as follows:

"1.     Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender:

(a)     the full, faithful and prompt performance of Borrower's obligation to pay to Lender the Guaranteed Indebtedness in the amount of $105,312,28 on or prior to October 15, 2021;

(b)     to pay to Lender, within ten (10) days of a written demand by Lender to Guarantor, any and all amounts paid by Lender to pay any or all property insurance or casualty insurance, which insurance payments have not been paid in full in accordance with Section 4C of the Loan Agreement before any such insurance payment becomes due and payable to the applicable insurer;

(c)     to pay to Lender, within ten (10) days of a written demand by Lender to Guarantor, any and all amounts paid by Lender

5

to pay any or all of the Tax Loan and/or Second Tax Loan in the event Borrower fails to fulfill its covenant in Section 3(b) above;

(d)     payment in full of all sums due under the Note and Loan Documents, including, but not limited to, all accrued and unpaid interest under the Note, all outstanding principal under the Note and all sums expended by Lender under any of the Loan Documents, including, but not limited to protective advances, in the event any tax lien of any type, including, but not limited to, any lien securing either the Tax Loan or Second Tax Loan, is foreclosed in any manner against the Property; and

(e)     payment in full of all sums due under the Note and Loan Documents, including, but not limited to, all accrued and unpaid interest under the Note, including, but not limited to, all applicable Default Interest, all outstanding principal under the Note and all sums expended by Lender under any of the Loan Documents, including, but not limited to, protective advances, in the event a litigation or other legal proceeding related to the Loan filed by Borrower, Guarantor or any other party in which Borrower or Guarantor owns a direct or indirect ownership interest, that delays, opposes, impedes, obstructs, hinders, enjoins or otherwise interferes with or frustrates the efforts of Lender to exercise any rights and remedies available to Lender as provided herein or in any other Loan Document or to realize on any collateral for the Loan, including, but not limited to, the Property, including, without limitation, the assertion by any Borrower, Guarantor or any other party in which Borrower or Guarantor owns a direct or indirect ownership interest of any defenses or counterclaims against Lender which is found by the hearing court, administrative body or other governmental authority to have been brought in bad faith.

4.     <u>Nullification of Pay Rate and Default Interest Forgiveness Provision and Principal Forgiveness Provision Upon A New Event of Default or Forbearance Default</u>. Borrower, Guarantor and Lender agree that if (a) a new Event of Default shall occur under any of the Loan Documents on or prior to October 15, 2021 or (b) a-Forbearance Default shall occur at any time under this Agreement or (c) Borrower fails to make any monthly payment of principal and interest due and payable under the Note arising after the Effective Date when such payments are due and payable, the provisions of: (i) Section 3(a) above regarding (A) the use of a Pay Rate shall be null and void and Borrower shall pay all interest under the Note to Lender at the Default Rate as and when interest is due under the Note and (B) the Default Interest Forgiveness Provision shall be null and void; and (ii) the Principal Forgiveness Provision in Section 3(c) shall be null and void and

8300289 v10 (70859.00050.000)

**Exhibit F**                    **6/57**

Borrower will be obligated to pay all outstanding principal, all accrued and unpaid interest at the Default Interest rate, all accrued and unpaid Default Interest and all reasonable expenses of Lender in Lender's enforcement of Borrower's repayment of the Loan, including, but not limited to Lender's reasonable legal fees; provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement [Borrower's bankruptcy], Borrower, shall be entitled to the lesser of (x) a thirty (30) day cure period after receipt of notice from Lender or (y) any cure period that is already set forth in the Loan Documents that is applicable to such non-monetary default.

5.      Obligations Absolute. The obligation of Borrower to repay the Loan is absolute and unconditional, and there exists no right of setoff or recoupment, counterclaim or defense of any nature whatsoever to payment of the Note. The obligation of the Guarantor to perform its obligations under the Guaranty is absolute and unconditional, and there exists no right of setoff or recoupment, counterclaim or defense of any nature whatsoever to any of the Guarantor's obligations to make payment under the Guaranty.

6.      Acknowledgment and Agreement. Borrower and the Guarantor acknowledge and agree that, as of the date hereof, Lender is not in default of any of its obligations under any of the Loan Documents or the First Forbearance Agreement, and has fully performed all of Lender's obligations under the Loan Documents and the First Forbearance Agreement. No known event has occurred as of the date hereof that would in any way render Lender liable to Borrower or Guarantor under any of the Loan Documents or the First Forbearance Agreement.

7.      Ratification of Liens and Security Interest. Borrower and Guarantor hereby acknowledge and agree that the liens, security interests and obligations created by the Loan Documents, including, but not limited to, the Note, the Deed of Trust, the Security Agreement and the Guaranty, are valid, subsisting, perfected and enforceable liens, security interests and obligations and are superior to all liens, security interests and obligations other than any exceptions that Lender may have approved in writing.

8.      Representations and Warranties. Borrower and the Guarantor hereby represent and warrant to Lender as follows:

(a)     Recitals. The Recitals set forth above in this Agreement are true and correct in all respects and form the basis for this Agreement, including, but not limited to, the present existence of the Existing Events of Default and Borrower's failure to perform the Section 3(d) and (e) Obligations.

8300289 v10 (70859.00050.000)

(b)      Incorporation of Representations.   All representations and warranties of Borrower in the Loan Documents are incorporated herein in full by this reference and are true and correct as of the date hereof.

(c)      Liens Against the Property. Other than the liens and encumbrances listed in the Title Report and a lien filed by NAI for broker's commissions, there are no other liens or encumbrances encumbering the Property or any portion thereof, whether superior or junior to the lien of the Deed of Trust.

(d)      Taxes. Other than the amounts owing under the Tax Loan and Second Tax Loan, all real property taxes for the years 2020 and prior years have been paid in full.

(e) Tax Loans. Attached as Exhibit B to this Agreement, Borrower are true, correct and complete copies of the loan documents evidencing the Tax Loan and the Second Tax Loan, including, but not limited to, the two separate deeds of trust or other agreement or document executed by Borrower to secure the Tax Loan and the Second Tax Loan.

(f) Partnership/Corporate Power; Authorization.  Borrower has the limited liability company power to enter into, execute and deliver this Agreement to Lender and Borrower has been duly authorized by all requisite partnership action, limited liability company action and corporate action, as applicable to execute and deliver this Agreement to Lender and to perform each of their obligations hereunder.  This Agreement has been duly executed and delivered by Borrower and Guarantor.

(g)      Enforceability. This Agreement and the Loan Documents are legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms and this Agreement and the Guaranty and other Loan Documents to which Guarantor is a party are legal, valid and binding obligations of Guarantor, respectively, enforceable against the respective Guarantor in accordance with their respective terms, subject to bankruptcy and other limitations effecting creditors' rights generally.

(h)      No Violation. Borrower's and Guarantor's execution, delivery and performance of this Agreement do not and will not (i) violate any law, rule, regulation or court order to which Borrower or Guarantor is subject, or (ii) conflict with or result in a breach of any agreement to which Borrower or Guarantor is party or by which they or their assets are bound.

(i)      Full Opportunity for Review; No Undue Influence. This Agreement has been reviewed by Borrower and Guarantor, which acknowledge and agree that

8300289 v10 (70859.00050.000)

**Exhibit F**                                                  **8/57**

Borrower and Guarantor: (i) understand fully the terms of this Agreement and the consequences of the issuance hereof; (ii) have been afforded an opportunity to have this Agreement reviewed by, and to discuss this Agreement with, such attorneys and other persons as Borrower and Guarantor may wish; and (iii) have entered into this Agreement of their own free will and accord and without threat or duress. This Agreement and all information furnished to Lender is made and furnished in good faith, for value and for valuable consideration. This Agreement has not been made or induced by any fraud, duress or undue influence exercised by Lender or any other person.

9.      Consent to Relief. Borrower and Guarantor, recognizing that Lender by this Agreement is changing its position in reliance upon the expressed good faith of Borrower and Guarantor and the representations, acknowledgments, warranties and covenants of the Borrower and Guarantor contained in this Agreement, further agree that, in addition to and without limiting any other rights or remedies of Lender howsoever arising, immediately upon termination of the Second Forbearance Period Lender shall be entitled to immediately exercise any and all rights and remedies of Lender regarding the Existing Events of Default, at law or in equity, including, but not limited to, Lender's Enforcement Rights.   Borrower shall fully cooperate with Lender in transferring ownership of the Property and collateral to Lender, or its designee(s), assignee(s) or other transferee(s), in connection with a foreclosure and/or setoff of such Property and collateral.  Neither Borrower nor Guarantor will take any action whatsoever to delay, hinder or interfere with any setoff, foreclosure action or any other Lender Enforcement Rights initiated by Lender with respect to the Property and/or collateral, nor raise any defenses thereto. Borrower and Guarantor shall execute and deliver such agreements of sale, transfer instruments or documents or assignments, with warranties, as may be necessary or desirable, as determined by Lender, in its sole and absolute discretion, to effectuate any such sale and/or setoff.

10.      No Waiver of Rights Under Loan Documents. Any failure by Lender at any time to insist, or any election by Lender at any time not to insist, upon strict performance by Borrower or Guarantor or others of any of the terms, provisions, or conditions of any of the Loan Documents shall not be deemed to be or have been, a waiver of same or of any other terms, provisions, or conditions thereof, and Lender shall have the right at any time or times to insist upon specific performance by Borrower, Guarantor or others of any and all of such terms, provisions, and conditions contained herein or in the Loan Documents.

11.      Forbearance Default. Each of the following listed below in this Section 11 shall constitute a "Forbearance Default" under this Agreement (x) immediately upon Borrower's failure to pay any amounts due under any of the Loan Documents or (y) upon Borrower's failure to cure any non-monetary breach of any–covenant, agreement or

8300289 v10 (70859.00050.000)

representation by Borrower or Guarantor under this Agreement within thirty (30) days of receipt of written notice from Lender to Borrower of such breach, including the following:

(a)     Borrower or Guarantor shall suffer the appointment of a receiver, trustee, custodian or similar fiduciary, or shall make an assignment for the benefit of creditors, or any petition for relief shall be filed by or against Borrower or Guarantors under the U.S. federal bankruptcy code (the "Bankruptcy Code");

(b)     Borrower or Guarantor shall fail to keep or perform any of the covenants or agreements contained in this Agreement, including, but not limited to, paying and causing Lender to receive the amounts set forth in Section 3 above on the dates set forth in Section 3 above;

(c)     any representation or warranty of Borrower or Guarantor contained in this Agreement or in any of the Loan Documents proves to have been false or misleading in any material respect when made or furnished; or

(d)     the occurrence or existence of any-Event of Default (as defined in any of the Loan Documents) (other than any of the Existing Events of Default) under any of the Loan Documents.

12.     <u>Effect and Construction of Agreement.</u>   Except as expressly provided herein, the Loan Documents are hereby ratified and confirmed and shall be and shall remain in full force and effect in accordance with their respective terms, and this Agreement shall not be construed to:  (i) impair the validity, perfection or priority of any lien or security interest securing the Loan; (ii) waive or impair any rights, powers or remedies of Lender under the any of the Loan Documents; (iii) constitute an agreement by Lender or require Lender to extend the Second Forbearance Period, or grant additional concessions, or extend the time for payment of any of the Loan; or (iv) make any loans or other extensions of credit to Borrower or Guarantor, including, but not limited to, any advances under the Note or any of the Loan Documents.  Borrower and Guarantor acknowledge that they have consulted with counsel or with such other experts or advisors as Borrower and Guarantor have deemed necessary in connection with the negotiation, execution and delivery of this Agreement.  This Agreement shall be construed without regard to any presumption or rule requiring that this Agreement be construed against the party causing this Agreement or any part hereof to be drafted.

13.     <u>Costs and Expenses.</u>  Borrower agrees to pay upon demand all reasonable costs, fees and expenses of Lender and Lender's attorneys incurred in connection with (a) the Existing Events of Default, and (b) the negotiation, preparation, administration and enforcement of, and the preservation of any rights under, this Agreement and/or any of the Loan Documents, and the transactions and other matters contemplated hereby and

thereby, including, without limitation, all reasonable attorneys' fees, and copy and delivery costs.

14.    Miscellaneous.

(a)    Further Assurances. Borrower and Guarantor agree to execute such other and further documents and instruments as Lender may request to implement the provisions of this Agreement and to perfect and protect the liens and security interests created by the Loan Documents.

(b)    Benefit of Agreement. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto, as well as by their respective successors and assigns. No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement.

(c)    Severability. The provisions of this Agreement are intended to be severable. If any provisions of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or enforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.

(d)    Governing Law. This Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of Texas, without regard to the choice or conflict of law principles of such state.

(e)    Counterparts; Facsimile Signatures. This Agreement may be executed in any number of counterparts and by different parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by facsimile transmission or an email pdf shall be deemed to be an original signature hereto.

(f)    Notice. Any notices with respect to this Agreement shall be given in the manner provided for in the Loan Documents, except that any notices to Lender and to Lender's counsel shall be given to the following:

Veritex Community Bank
8214 Westchester Drive
Dallas, Texas 75225

11                    8300289 v10 (70859.00050.000)

Attention: Mr. Michael Carp

With copies to lender's counsel as follows:

Kane, Russell, Coleman & Logan P.C.
901 Main Street
Dallas, Texas 75202
Attn: Charles E. Aster, Esq.

And any notices to Borrower or Guarantor shall be given to the following:

BDFI, LLC
1001 West Loop South
Suite 700
Houston TX 77027
Attn: Mark T. Torok, Esq.

(g)     Survival. All representations, warranties, covenants, agreements, undertakings, waivers and releases of Borrower and/or Guarantor contained herein shall survive the termination of the Second Forbearance Period and payment in full of the Loan.

(h)     Amendment. No amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the parties hereto.

(i)     No Limitation on Lender. Nothing in this Agreement shall be deemed in any way to limit or restrict any of Lender's rights to seek in a bankruptcy court or any other court of competent jurisdiction, any relief Lender may deem appropriate in the event that a voluntary or involuntary petition for relief under any chapter of the Bankruptcy Code is filed by or against Borrower or Guarantor.

(j)     Material Inducement. Borrower and Guarantor further acknowledge and agree that the representations, acknowledgments, agreements and warranties in this Agreement have been made by Borrower and Guarantor as a material inducement to Lender to enter into this Agreement, that Lender is relying on such representations and warranties, has changed its position in reliance thereon and that Lender would not have entered into this Agreement without such representations, acknowledgments, agreements, and warranties.

15.     Misrepresentation. Borrower shall indemnify and hold Lender harmless from and against any and all losses, damages, costs and expenses (including attorneys'

12                    8300289 v10 (70859.00050.000)

fees) incurred by Lender as a direct or indirect result of (i) any breach of any representation or warranty contained in this Agreement, or (ii) any breach or default under any of the covenants or agreements contained in this Agreement.

16. <u>No Commitment.</u> Borrower and Guarantor agree that Lender has made no commitment or other agreement regarding the Loan Documents, including, but not limited to, any commitment or agreement to refinance or renew the Loan now or at the maturity of the Note. Borrower and Guarantor warrant and represent that Borrower and Guarantor will not rely on any commitment, further agreement to forbear or other agreement on the part of Lender, including, but not limited to, any commitment or agreement to refinance or renew the Loan now or at the maturity of the Note, unless such commitment or agreement is in a separate written instrument signed by Lender.

1. <u>Release of Claims.</u> IN CONSIDERATION OF LENDER ENTERING INTO THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, THE DEFAULT INTEREST FORGIVENESS PROVISION AND THE PRINCIPAL FORGIVENESS PROVISION, BORROWER AND GUARANTOR, THEIR AGENTS, EMPLOYEES, SUCCESSORS, AFFILIATES, AND ASSIGNS (THE "RELEASING PARTIES") HEREBY VOLUNTARILY AND KNOWINGLY RELEASE AND FOREVER DISCHARGE LENDER, ITS ATTORNEYS, AGENTS, EMPLOYEES, SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES"), FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, WHICH THE RELEASING PARTIES HAVE, MAY HAVE OR WHICH MAY ARISE IN THE FUTURE AGAINST THE RELEASED PARTIES, IF ANY, INCLUDING, BUT NOT LIMITED TO, CLAIMS ARISING OUT OF (I) CONTRACT, TORT, VIOLATION OF LAW, STATUTE, OR REGULATIONS, OR OTHERWISE, (II) THE LOANS REPRESENTED BY THE NOTE, (III) ANY ACTION OR INACTION ON THE PART OF LENDER WITH RESPECT TO THE LOAN REPRESENTED BY THE NOTE, (IV) ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE, (V) THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS, OR (VI) THE NEGOTIATION, EXECUTION OR DELIVERY OF THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS.

BORROWER AND EACH OF THE GUARANTORS REPRESENT AND WARRANT TO LENDER THAT THEY HAVE NOT PURPORTED TO TRANSFER, ASSIGN OR OTHERWISE CONVEY ANY RIGHT, TITLE OR INTEREST OF BORROWER AND/OR GUARANTOR IN ANY RELEASED MATTER TO ANY OTHER PERSON AND THAT THE FOREGOING CONSTITUTES A FULL AND

8300289 v10 (70859.00050.000)

COMPLETE RELEASE OF BORROWER'S AND GUARANTOR'S CLAIMS, IF ANY, WITH RESPECT TO ALL RELEASED MATTERS.

    2.    VENUE; JURISDICTION; JURY TRIAL WAIVER. BORROWER AND GUARANTOR HEREBY IRREVOCABLY:

    (i)    CONSENTS TO THE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN HARRIS COUNTY, TEXAS;

    (ii)    AGREES THAT VENUE SHALL BE PROPER IN ANY COURT OF COMPETENT JURISDICTION LOCATED IN HARRIS COUNTY, TEXAS; AND

    (iii)    WAIVES THEIR RIGHT TO TRIAL BY JURY IN ANY CONTROVERSY ARISING OUT OF OR RELATING TO THE NOTE, THE GUARANTY, THE DEED OF TRUST, THIS AGREEMENT OR ANY OTHER OF THE LOAN DOCUMENTS.

    3.    NOTICE OF FINAL AGREEMENT. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES HERETO. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.

**[Signature Pages Follow]**

8300289 v10 (70859.00050.000)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**LENDER:**

**VERITEX COMMUNITY BANK,**
a Texas state-chartered bank

By: _____
Michael Carp
Executive Vice President, Director
of Special Assets

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Michael Carp, Executive Vice President of Veritex Community Bank, the Texas state-chartered bank that executed the foregoing instrument, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act of the said bank, and that he executed the same as the act of such bank for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this ⁷ day of ~~April~~ May, 2021.



KERI MICHELLE NORRIS
Notary ID #125385867
My Commission Expires
August 4, 2021

_____
Notary Public in and for the State of Texas
[Notarial Seal]

8300289 v10 (70859.00050.000)

**BORROWER:**

BDFI LLC,
a New York limited liability company

By: _____

Ali Choudhri, sole Manager and
Member

THE STATE OF TEXAS §
 §
COUNTY OF HARRIS §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Ali Choudhri, sole Manager and Member of BDFI LLC, a New York limited liability company, that executed the foregoing instrument, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act of the said limited liability company, and that he executed the same as the act of such limited liability company for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 3rd day of Nov, 2021.

_____
Notary Public in and for the State of Texas
[Notarial Seal]

STEPHANIE ALVAREZ
ID #131078509
My Commission Expires
April 06, 2025

8300289 v10 (70859.00050.000)

**Exhibit F** **16/57**

GUARANTOR:

_____
Ali Choudhri, individually


THE STATE OF TEXAS      §
                        §
COUNTY OF HARRIS      §

       BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Ali Choudhri known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

       GIVEN UNDER MY HAND AND SEAL OF OFFICE this 3rd day of May, 2021.

_____
Notary Public in and for the State of Texas
[Notarial Seal]

**STEPHANIE ALVAREZ**
ID #131078509
My Commission Expires
April 06, 2025

17                  8300289 v10 (70859.00050.000)

**Exhibit F**             **17/57**

**EXHIBIT A**

**Title Report**

*(See attached pages)*

18                                                    8300289 v10 (70859.00050.000)



March 11, 2021

Re: Title Number:  573017-F-TX-CR-GL
    Premises:     50 Briar Hollow Lane, Houston, TX 77027
    County:      Harris
    Borrower:   BDFI, LLC

Dear Sir/Madam,

With reference to the above captioned matter, enclosed herewith please find our Title Report.

If you have any questions regarding same, please contact our office.

We look forward to working with you on this transaction.

Thank you.

Transaction Contacts:

Joe Grant / (469) 445-1345 / jgrant@kvnational.com



## Wire Instructions
### (Texas Properties Only)

Beneficiary:  Kensington Vanguard National Land Services of TX, LLC

Account #: 4880-3837-9804

Routing #:  026-009-593

Bank of America
700 Louisiana
Houston, TX 77002


ATTN: Joe Grant

RE: 573017-F-TX-CR-GL

Please reference the property address

50 Briar Hollow Lane, Houston, TX 77027

**7950 Legacy Drive Suite 375, Plano, TX 75024**
**5005 Lyndon B Johnson FWY, Suite 200, Dallas, TX 75244**

20  8300289 v10 (70859.00050.000)

**PAGE 1 OF 3**

FEE  $69.95

## TAX CERTIFICATE
### LANDOVER HILLS PROPERTY TAX SERVICE
1670 CR 2012
WALNUT SPRINGS~ TX 76690

| CUST: LANDOVER HILLS PROPERTY TAX SE | BRANCH: KV | | | |
|---|---|---|---|---|
| ORDER: 573017    CLOSER: DG | ORDER TYPE: A | SUBTYPE: R | | DATE: 03/03/2021 |

### CAD ACCOUNT NUMBER SUMMARY
045-140-002-0105

### SUMMARY OF ALL ACCOUNT(S)

| | SUMMARY OF CURRENT YEAR | | SUMMARY OF ALL TAXES DUE | |
|---|---|---|---|---|
| | TAX YEAR | BASE TAX | DUE 03/2021 | DUE 04/2021 |
| HARRIS COUNTY | 2020 | 122,034.19 | 133,017.27 | 135,457.95 |
| CITY OF HOUSTON | 2020 | 116,349.65 | 126,821.12 | 129,148.11 |
| ISD - HOUSTON | 2020 | 234,650.06 | 255,768.57 | 260,461.57 |
| PORT OF HOUSTON AUTHORITY | 2020 | 2,052.23 | 2,236.93 | 2,277.98 |
| HC DEPT. OF EDUCATION | 2020 | 1,033.98 | 1,127.04 | 1,147.72 |
| HOUSTON COMMUNITY COLLEGE | 2020 | 20,763.14 | 22,631.82 | 23,047.09 |
| TOTAL TAX | | 496,883.25 | 541,602.75 | 551,540.42 |

********** COMMENTS ********** CAUTION ********** READ BEFORE CLOSING **********

| HARRIS COUNTY | - | EXEMPTS: 20%; O65-160,000; DIS-160,000 |
|---|---|---|
| | | RATE INCLUDES COUNTY(.391160) |
| | | FLOOD CONTROL(.031420) |
| | | HOSPITAL(.166710) |
| CITY OF HOUSTON | - | EXEMPTS: HS-20%; O65-160,000; DIS-160,000 |
| ISD - HOUSTON | - | EXEMPTS: 20%+25,000; O65-15,000; DIS-15,000 |
| HOUSTON COMMUNITY COLLEGE | - | EXEMPTS: HS-10%/5,000;O65-90,000; DIS-90,000 |

001 040 042 044 048 061
LH5/LH1

| CAD# | 045-140-002-0105 |
|---|---|
| DESC | TRS 9B 13 & 13A ABST 826 W WHITE |
| ACREAGE | 3.170 |
| SITUS | *50 BRIAR HOLLOW LN 061* |
| MAIL | 720 N POST OAK RD 500 HOUSTON TX 77024-3928 |
| ASSESSED OWNER(S) | |
| | *BDFI LLC* |
| CLASS CODE | F1 - REAL, COMMERCIAL |
| HIGH LIABILITY | |

| | 2020 ASSESSED VALUES |
|---|---|
| LAND | 8,287,200 |
| IMPROVEMENT | 12,421,481 |
| TOTAL VALUE | 20,708,681 |
| TOTAL TAX RATE | 2.3993960 |
| TOTAL EST TAXES | |
| W/O EXEMPT | 496883.25 |

### TAX ENTITY INFORMATION

| HARRIS COUNTY | | | PAYMENTS AS OF | | 02/01/2021 |
|---|---|---|---|---|---|
| PO BOX 4822 HOUSTON, TX 77210-4822 | | | 20 TAX RATE | | 0.5892900 |
| PHONE 713-274-8000 | | | W/O EXEMPT | | 122,034.19 |
| EXEMPTIONS NONE | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
| | 20 | 122,034.19 | 122,034.19 | 133,017.27 | 135,457.95 |
| TS 3-3-21 | SUBTOTAL | 122,034.19 | 122,034.19 | 133,017.27 | 135,457.95 |

21

8300289 v10 (70859.00050.000)

**Exhibit F**                                    **21/57**

**PAGE 2 OF 3**

**TAX CERTIFICATE**
**LANDOVER HILLS PROPERTY TAX SERVICE**
1670 CR 2012
WALNUT SPRINGS~ TX 76690

| CUST: LANDOVER HILLS PROPERTY TAX SE | | BRANCH: KV | | | |
|---|---|---|---|---|---|
| ORDER: 573017 | CLOSER: DG | ORDER TYPE: A | SUBTYPE: R | DATE: 03/03/2021 | |

### CITY OF HOUSTON — PAYMENTS AS OF 02/01/2021
COLLECTED BY COUNTY  
PHONE 713-274-8000  
EXEMPTIONS NONE  
TS 3-3-21

| | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
|---|---|---|---|---|---|
| 20 TAX RATE | | | | | 0.5618400 |
| W/O EXEMPT | | | | | 116,349.65 |
| | 20 | 116,349.65 | 116,349.65 | 126,821.12 | 129,148.11 |
| SUBTOTAL | | 116,349.65 | 116,349.65 | 126,821.12 | 129,148.11 |

### ISD - HOUSTON — PAYMENTS AS OF 02/01/2021
COLLECTED BY COUNTY  
PHONE 713-274-8000  
EXEMPTIONS NONE  
TS 3-3-21

| | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
|---|---|---|---|---|---|
| 20 TAX RATE | | | | | 1.1331000 |
| W/O EXEMPT | | | | | 234,650.06 |
| | 20 | 234,650.06 | 234,650.06 | 255,768.57 | 280,461.57 |
| SUBTOTAL | | 234,650.06 | 234,650.06 | 255,768.57 | 280,461.57 |

### PORT OF HOUSTON AUTHORITY — PAYMENTS AS OF 02/01/2021
COLLECTED BY COUNTY  
PHONE 713-274-8000  
EXEMPTIONS NONE  
TS 3-3-21

| | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
|---|---|---|---|---|---|
| 20 TAX RATE | | | | | 0.0099100 |
| W/O EXEMPT | | | | | 2,052.23 |
| | 20 | 2,052.23 | 2,052.23 | 2,236.93 | 2,277.98 |
| SUBTOTAL | | 2,052.23 | 2,052.23 | 2,236.93 | 2,277.98 |

### HC DEPT. OF EDUCATION — PAYMENTS AS OF 02/01/2021
COLLECTED BY COUNTY  
PHONE 713-274-8000  
EXEMPTIONS NONE  
TS 3-3-21

| | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
|---|---|---|---|---|---|
| 20 TAX RATE | | | | | 0.0049830 |
| W/O EXEMPT | | | | | 1,033.98 |
| | 20 | 1,033.98 | 1,033.98 | 1,127.04 | 1,147.72 |
| SUBTOTAL | | 1,033.98 | 1,033.98 | 1,127.04 | 1,147.72 |

### HOUSTON COMMUNITY COLLEGE — PAYMENTS AS OF 02/01/2021
COLLECTED BY COUNTY  
PHONE 713-274-8000  
EXEMPTIONS NONE  
TS 3-3-21

| | YR | BASE TAX | BASE DUE | DUE 03/2021 | DUE 04/2021 |
|---|---|---|---|---|---|
| 20 TAX RATE | | | | | 0.1002630 |
| W/O EXEMPT | | | | | 20,763.14 |
| | 20 | 20,763.14 | 20,763.14 | 22,631.82 | 23,047.09 |
| SUBTOTAL | | 20,763.14 | 20,763.14 | 22,631.82 | 23,047.09 |

---

**CERTIFICATION, CONDITIONS AND EXCLUSIONS**

THIS CERTIFIES THAT ALL AD VALOREM TAXES APPLICABLE TO THE ABOVE REFERENCED PROPERTY HAVE BEEN CHECKED AND FOUND TO HAVE THE STATUS INDICATED.

(1) THIS CERTIFICATION DOES NOT COVER ANY CHANGES MADE TO THE TAX ROLL OR RECORDS AFTER THE "PAYMENT AS OF" DATES LISTED ABOVE. (2) THIS DOCUMENT DOES NOT CONSTITUTE A REPORT ON OR CERTIFICATION OF MINERAL (PRODUCTIVE AND NON-PRODUCTIVE) TAXES, LEASES, PERSONAL PROPERTY TAXES OR OTHER NON AD VALOREM TAXES (SUCH AS PAVING LIENS, STAND-BY CHARGES OR MAINTENANCE ASSESSMENTS). THESE ITEMS MAY BE INCLUDED FOR CONVENIENCE PURPOSES ONLY. (3) THIS CERTIFICATE IS NOT TRANSFERRABLE AND IS ENFORCEABLE ONLY BY THE PARTY TO WHICH IT HAS BEEN ISSUED.

PRINTED BY LH5/LH1

8300289 v10 (70859.00050.000)

**Exhibit F** **22/57**

PAGE 3 OF 3

| HOA CERTIFICATE |
|---|
| LANDOVER HILLS PROPERTY TAX SERVICE |
| 1670 CR 2012 |
| WALNUT SPRINGS~ TX 76690 |

| CUST: LANDOVER HILLS PROPERTY TAX SE | BRANCH: KV | | | |
|---|---|---|---|---|
| ORDER: 573017 | CLOSER: DG | ORDER TYPE: A | SUBTYPE: R | DATE: 03/03/2021 |

SELLER    BDFI LLC

BUYER

COUNTY    HARRIS

SUBD NAME / BLK A0826 W WHITE

   NO HOA FOUND FOR A0826 W WHITE

\*\*\* OUR RESEARCH DOES NOT INDICATE THE EXISTENCE OF AN \*\*\*

\*\*\* HOA. PLEASE VERIFY WITH YOUR TITLE REPORT. IF AN \*\*\*

\*\*\* HOA IS KNOWN, PLEASE CONTACT YOUR TAX SERVICE \*\*\*

SUMMARY OF ACCOUNT 045-140-002-0105

DESC         TRS 9B 13 & 13A ABST 826 W WHITE

SITUS        50 BRIAR HOLLOW LN 061

### CONDITIONS, DISCLAIMERS AND EXCLUSIONS

This HOA Certificate does not constitute a report on or certification of: (1) mineral (productive and/or non-productive) taxes or leases; (2) personal property taxes; or (3) other non ad valorem taxes (such as paving liens, stand-by charges or maintenance assessments).

Data Trace Information Services LLC ("Data Trace") may have warranted the accuracy of this HOA Certificate to its customer (the "Data Trace Customer") pursuant to the terms and conditions of a written tax service agreement between Data Trace and said Data Trace Customer (the "Tax Service Agreement"). Any such warranty (hereinafter, "Data Trace Customer Warranty") does not: (a) extend to a third party bearer of this HOA Certificate; (b) cover any changes made to the records of the association or other assessment authority after the "payments as of," "paid," or "payment" dates delineated above; and (c) cover any invalid assessment information shown on the records of the association or other assessment authority authority or resulting from an error by the Data Trace Customer (including, without limitation, submission of incorrect property information by said Data Trace Customer). DATA TRACE MAKES NO WARRANTIES (EXPRESS OR IMPLIED) WITH RESPECT TO THIS HOA CERTIFICATE OTHER THAN (WHERE APPLICABLE) THE DATA TRACE CUSTOMER WARRANTY. Any and all claims under a Data Trace Customer Warranty must be submitted to Data Trace by the corresponding Data Trace Customer and are subject to the terms and conditions set forth in the pertinent Tax Service Agreement (including, without limitation, the filing deadlines applicable to such claims). In some jurisdictions Data Trace's validation of a HOA Certificate is required to activate a Data Trace Customer Warranty.

8300289 v10 (70859.00050.000)

Exhibit F          23/57



| | |
|---|---|
| *First American Title*™ | **Commitment for Title Insurance (T-7)** |
| | ISSUED BY<br>**First American Title Insurance Company** |
| **Commitment** | |

THE FOLLOWING COMMITMENT FOR TITLE INSURANCE IS NOT VALID UNLESS YOUR NAME AND THE POLICY AMOUNT ARE SHOWN IN **SCHEDULE A** AND OUR AUTHORIZED REPRESENTATIVE HAS COUNTERSIGNED BELOW.

We **FIRST AMERICAN TITLE INSURANCE COMPANY** will issue our title insurance policy or policies (the Policy) to You (the proposed insured) upon payment of the premium and other charges due, and compliance with the requirements in Schedule C. Our Policy will be in the form approved by the Texas Department of Insurance at the date of issuance, and will insure your interest in the land described in Schedule A. The estimated premium for our Policy and applicable endorsements is shown on Schedule D. There may be additional charges such as recording fees, and expedited delivery expenses.

This Commitment ends ninety (90) days from the effective date, unless the Policy is issued sooner, or failure to issue the Policy is our fault. Our liability and obligations to you are under the express terms of this Commitment and end when this Commitment expires.

*First American Title Insurance Company*

Dennis J. Gilmore, President          Greg L. Smith, Secretary

Kensington Vanguard National Land Services of TX, LLC

By:

_____
Authorized Signatory

(This Commitment is valid only when Schedules A, B, C and D are attached)     This Jacket was created electronically and constitutes an original document

| | |
|---|---|
| Form 5026348 (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14)<br>Texas |

24                                    8300289 v10 (70859.00050.000)

**Exhibit F**                                    **24/57**

### TEXAS TITLE INSURANCE INFORMATION

| | |
|---|---|
| Title insurance insures you against loss resulting from certain risks to your title.<br><br>The commitment for Title Insurance is the title insurance company's promise to issue the title insurance policy. The commitment is a legal document. You should review it carefully to completely understand it before your closing date. | El seguro de título le asegura en relación a perdidas resultantes de ciertos riesgos que pueden afectar el título de su propiedad.<br><br>El Compromiso para Seguro de Título es la promesa de la compañía aseguradora de títulos de emitir la póliza de seguro de título. El Compromiso es un documento legal. Usted debe leerlo cuidadosamente y enterderlo completamente antes de la fecha para finalizar su transacción. |

Your Commitment for Title Insurance is a legal contract between you and us. The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements.

Before issuing a Commitment for Title Insurance (the Commitment) or a Title Insurance Policy (the Policy), the Title Insurance Company (the Company) determines whether the title is insurable. This determination has already been made. Part of that determination involves the Company's decision to insure the title except for certain risks that will not be covered by the Policy. Some of these risks are listed in Schedule B of the attached Commitment as Exceptions. Other risks are stated in the Policy as Exclusions. These risks will not be covered by the Policy. The Policy is not an abstract of title nor does a Company have an obligation to determine the ownership of any mineral interest.

- MINERALS AND MINERAL RIGHTS may not be covered by the Policy. The Company may be unwilling to insure title unless there is an exclusion or an exception as to Minerals and Mineral Rights in the Policy. Optional endorsements insuring certain risks involving minerals, and the use of improvements (excluding lawns, shrubbery and trees) and permanent buildings may be available for purchase. If the title insurer issues the title policy with an exclusion or exception to the minerals and mineral rights, neither this Policy, nor the optional endorsements, ensure that the purchaser has title to the mineral rights related to the surface estate.

Another part of the determination involves whether the promise to insure is conditioned upon certain requirements being met. Schedule C of the Commitment lists these requirements that must be satisfied or the Company will refuse to cover them. You may want to discuss any matters shown in Schedules B and C of the Commitment with an attorney. These matters will affect your title and your use of the land.

When your Policy is issued, the coverage will be limited by the Policy's Exceptions, Exclusions and Conditions, defined below.

- EXCEPTIONS are title risks that a Policy generally covers but does not cover in a particular instance. Exceptions are shown on Schedule B or discussed in Schedule C of the Commitment. They can also be added if you do not comply with the Conditions section of the Commitment. When the Policy is issued, all Exceptions will be on Schedule B of the Policy.

- EXCLUSIONS are title risks that a Policy generally does not cover. Exclusions are contained in the Policy but not shown or discussed in the Commitment.

- CONDITIONS are additional provisions that qualify or limit your coverage. Conditions include your responsibilities and those of the Company. They are contained in the Policy but not shown or discussed in the Commitment. The Policy Conditions are not the same as the Commitment Conditions.

| | |
|---|---|
| Form 5025348 (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14)<br>Texas |

8300289 v10 (70859.00050.000)

## Exhibit F                              25/57

You can get a copy of the policy form approved by the Texas Department of Insurance by calling the Title Insurance Company at 1-888-632-1642 or by calling the title insurance agent that issued the Commitment. The Texas Department of Insurance may revise the policy form from time to time.

You can also get a brochure that explains the policy from the Texas Department of Insurance by calling 1-800-252-3439.

Before the Policy is issued, you may request changes in the policy. Some of the changes to consider are:

- Request amendment of the "area and boundary" exception (Schedule B, paragraph 2). To get this amendment, you must furnish a survey and comply with other requirements of the Company. On the Owner's Policy, you must pay an additional premium for the amendment. If the survey is acceptable to the Company and if the Company's other requirements are met, your Policy will insure you against loss because of discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements. The Company may then decide not to insure against specific boundary or survey problems by making special exceptions in the Policy. Whether or not you request amendment of the "area and boundary" exception, you should determine whether you want to purchase and review a survey if a survey is not being provided to you.

- Allow the Company to add an exception to "rights of parties in possession." If you refuse this exception, the Company or the title insurance agent may inspect the property. The Company may except to and not insure you against the rights of specific persons, such as renters, adverse owners or easement holders who occupy the land. The Company may charge you for the inspection. If you want to make your own inspection, you must sign a Waiver of Inspection form and allow the Company to add this exception to your Policy.

The entire premium for a Policy must be paid when the Policy is issued. You will not owe any additional premiums unless you want to increase your coverage at a later date and the Company agrees to add an Increased Value Endorsement.

## CONDITIONS AND STIPULATIONS

1.  If you have actual knowledge of any matter which may affect the title or mortgage covered by this Commitment, that is not shown in Schedule B, you must notify us in writing. If you do not notify us in writing, our liability to you is ended or reduced to the extent that your failure to notify us affects our liability. If you do notify us, or we learn of such matter, we may amend Schedule B, but we will not be relieved of liability already incurred.

2.  Our liability is only to you, and others who are included in the definition of Insured in the Policy to be issued. Our liability is only for actual loss incurred in your reliance on this Commitment to comply with its requirements, or to acquire the interest in the land. Our liability is limited to the amount shown in Schedule A of this Commitment and will be subject to the following terms of the Policy: Insuring Provisions, Conditions and Stipulations, and Exclusions.

 **First American Title™**

| **Important Notice** |
| ISSUED BY |
| **First American Title Insurance Company** |

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| To obtain information or make a complaint: | Para obtener información o para presentar una queja: |
| You may call First American Title Insurance Company's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al número de teléfono gratuito de First American Title Insurance Company's para información o para presentar una queja al: |
| **1-888-632-1642** | **1-888-632-1642** |
| You may also write to First American Title Insurance Company at: | Usted también puede escribir a First American Title Insurance Company: |
| **1 First American Way Santa Ana, California 92707** | **1 First American Way Santa Ana, California 92707** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Usted puede escribir al Departamento de Seguros de Texas a: |
| *P.O. Box 149104 Austin, TX 78714-9104 Fax: (512) 490-1007 Web: http://www.tdi.texas.gov E-mail: ConsumerProtection@tdi.texas.gov* | *P.O. Box 149104 Austin, TX 78714-9104 Fax: (512) 490-1007 Web: http://www.tdi.texas.gov E-mail: ConsumerProtection@tdi.texas.gov* |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact First American Title Insurance Company first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:** Si tiene una disputa relacionada con su prima de seguro con una reclamación, usted debe comunicarse con el First American Title Insurance Company primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas. |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **ADJUNTE ESTE AVISO A SU PÓLIZA:** Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto. |

Form 50-11265 (1-31-17)

Mandatory Complaint Notice (Rev. 6-1-15)

Texas

8300289 v10 (70859.00050.000)



| *First American Title*™ | Commitment for Title Insurance (T-7) |
|---|---|
| | **ISSUED BY** <br> **First American Title Insurance Company** |
| **Schedule A** | |

Effective Date: March 2, 2021 at 8:00 AM

GF No.: 573017-F-TX-CR-GL

Commitment No.: 573017-F-TX-CR-GL, Issued: March 11, 2021 at 8:00 AM.

1. The policy or policies to be issued are:

   (a) OWNER'S POLICY OF TITLE INSURANCE (Form T-1)
       (Not applicable for improved one-to-four family residential real estate)

       Policy Amount:
       PROPOSED INSURED:

   (b) TEXAS RESIDENTIAL OWNER'S POLICY OF TITLE INSURANCE
       -ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)

       Policy Amount:
       PROPOSED INSURED:

   (c) LOAN POLICY OF TITLE INSURANCE (Form T-2)

       Policy Amount:  TBD
       PROPOSED INSURED:   Lender to be named, and each successor in ownership of the indebtedness secured by
                           the insured mortgage, except a successor who is an obligor under the provisions of
                           Section 12(c) of the Conditions.
       Proposed Borrower:  BDFI, LLC

   (d) TEXAS SHORT FORM RESIDENTIAL LOAN POLICY OF TITLE INSURANCE (Form T-2R)

       Policy Amount:
       PROPOSED INSURED:
       Proposed Borrower:

   (e) LOAN TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)

       Binder Amount:
       PROPOSED INSURED:
       Proposed Borrower:

   (f) OTHER

       Policy Amount:
       PROPOSED INSURED:

(This Schedule A is valid only when Cover, Schedule B, C, and D are attached)

| Form 5025348-A (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|
| | Texas - Schedule A |

8300289 v10 (70859.00050.000)

## SCHEDULE A
### (Continued)

2. The interest in the land covered by this Commitment is:

   Fee Simple

3. Record title to the land on the Effective Date appears to be vested in:

   BDFI, LLC. <u>Vesting Deed</u>

(This Schedule A is valid only when Cover, Schedule B, C, and D are attached)

| Form 5026348-A (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|
| | Texas - Schedule A |

8300289 v10 (70859.00050.000)

**Exhibit F**                          **29/57**

## SCHEDULE A
### (Continued)

4. Legal description of land:

ALL THAT CERTAIN 3.1708 ACRES OF LAND OUT OF LOT 9, ROY B. NICHOLS SUBDIVISION ACCORDING TO THE PLAT THEREOF FILED AT VOLUME 321, PAGE 431 HARRIS COUNTY DEED RECORDS BEING THE SAME PROPERTY DESCRIBED IN A DEED DATED 09-17-2004 FROM CAPTAIN'S PORTFOLIO L.P. TO RMC 2004 PORTFOLIO I, L.P., FLIED IN THE OFFICIAL PUBLIC RECORDS OF HARRIS COUNTY, TEXAS AT CLERK FILE NO. X-927647, FILM CODE NO. 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, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A FOUND 5/8" IRON ROD MARKING THE SOUTHEAST CORNER OF THE END OF EMMET LANE (30' WIDE) ALSO BEING THE MOST SOUTHERLY SOUTHWEST CORNER OF BRIAR HOLLOW, ACCORDING TO THE PLAT THEREOF FILED AT VOLUME 32, PAGE 61 HARRIS COUNTY MAP RECORDS;

THENCE S 89° 56' OCT' E - 457.91', WITH THE SOUTH LINE OF SAID BRIAR HOLLOW, TO A FOUND 5/8" IRON ROD WITH CAP FOR CORNER;

THENCE ALONG THE CENTERLINE MEANDERS OF BRIAR HOLLOW GULLY THE FOLLOWING TEN (10) COURSES AND DISTANCES:

S 04° 18' 21" W 75.54' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
S 70° 53' 35" W - 28.65' TO A CALLED AND FOUND 1-1/4" IRON PIPE FOR ANGLE POINT;
S 51° 01' 16" W - 71.17' TO A CALLED AND FOUND 1-1/4" IRON PIPE FOR ANGLE POINT;
S 12° 39' 40" E - 80.46' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
S 24° 34' 52" W 15.47' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
S 59° 41' 53" W - 15.10' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
S 84° 15' 45" W - 11.90' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
N 65° 48' 54" W - 29.20' TO A CALLED AND FOUND 1-1/4" IRON PIPE FOR ANGLE POINT;
N 89° 36' 28" W 53.02' TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;
S 74° 28' 23" W - 77.11' TO A FOUND 5/8" IRON ROD WITH CAP FOR CORNER,

THENCE N 25° 50' 33" W - 77.33', WITH THE SOUTH LINE OF THAT CERTAIN 3.2309 ACRE TRACT AS DESCRIBED IN A SUBSTITUTE TRUSTEE'S DEED DATED 1-3-1989 FROM MARK D. STOUT, SUBSTITUTE TRUSTEE TO NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY FILED IN THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF HARRIS COUNTY, TEXAS AT CLERK FILE NO. L-995411, FILM CODE NO. 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, TO A FOUND 5/8" IRON ROD WITH CAP FOR CORNER;

THENCE N 78° 28' 22" W - 97.76', CONTINUING WITH THE SOUTH LINE OF SAID 3.2309 ACRE TRACT, TO A FOUND 5/8" IRON ROD FOR ANGLE POINT;

THENCE N 89° 39' 54" W - 113.14', CONTINUING WITH THE SOUTH LINE OF SAID 3.2309 ACRE TRACT, TO A FOUND 5/8" IRON ROD WITH CAP FOR ANGLE POINT;

THENCE N 89° 56' 00" W - 348.00', CONTINUING WITH THE SOUTH LINE OF SAID 3.2309 ACRE TRACT, TO A FOUND 5/8" IRON ROD WITH CAP FOR CORNER;

THENCE N 01° 21' 00" E - 140.00', WITH THE EAST RIGHT-OF-WAY LINE OF BRIAR HOLLOW LANE (60' WIDE), TO A FOUND 5/8" IRON ROD WITH CAP FOR CORNER;

THENCE N 45° 42' 30" E - 14.30', WITH A CUT-BACK CORNER FOR EMMET LANE, TO A FOUND 5/8" IRON ROD FOR CORNER;

THENCE S 89° 56' OCT' E - 374.89', WITH THE SOUTH RIGHT-OF-WAY LINE OF SAID EMMET LANE, TO THE POINT OF BEGINNING AND CONTAINING 3.1708 ACRES (138,119 SQUARE FEET) OF LAND, MORE OR LESS.

(This Schedule A is valid only when Cover, Schedule B, C, and D are attached)

| Form 5025348-A (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|
| | Texas - Schedule A |

8300289 v10 (70859.00050.000)



| First American Title™ | Commitment for Title Insurance (T-7) |
|---|---|
| | ISSUED BY **First American Title Insurance Company** |
| **Schedule B** | |

GF No.: 573017-F-TX-CR-GL

### EXCEPTIONS FROM COVERAGE

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorney's fees, and expenses resulting from:

1. ~~The following restrictive covenants of record itemized below:~~

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3. Homestead or community property or survivorship rights, if any, of any spouse of any insured. (Applies to the Owner's Policy only.)

4. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

   a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or

   b. to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or

   c. to filled-in lands, or artificial islands, or

   d. to statutory water rights, including riparian rights, or

   e. to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

   (Applies to the Owner's Policy only.)

5. Standby fees, taxes and assessments by any taxing authority for the year 2021, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, *Texas Tax Code*, or because of improvements not assessed for a previous tax year. (If Texas Short form Residential Loan Policy of Title Insurance (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year 2021, and subsequent years.")

6. The terms and conditions of the documents creating your interest in the land.

7. Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner. (Applies to the Loan Title Policy binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a Binder is issued.)

(This Schedule B is valid only when Cover, Schedule A, C and D are attached)

| Form 5025348-B (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|
| | Texas - Schedule B |

31

8300289 v10 (70859.00050.000)

**SCHEDULE B**
(Continued)

8. Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage. (Applies to Loan Policy T-2 only.)

9. The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Loan Policy of Title Insurance (T-2R). (Applies to Texas Short Form Residential Loan Policy of Title Insurance (T-2R) only.)  Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form Residential Loan Policy of Title Insurance (T-2R).

10. The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):

    a. Rights of Parties in Possession. (OWNER POLICY ONLY)

    b. Visible and apparent easements on or across property described in Schedule A.

    c. Rights of tenants, as tenants only, under unrecorded leases or rental agreements, as evidenced by, but not limited to those Leases set out in the Subordination, Non-Disturbance and Attornment Agreements recorded under County Clerk's File Nos. 20140100178, 20140100179, 20140100180, 20140100181, 20140100182, 20140100183, 20140100184, 20140100185, 20140100186, 20140100675, 20140100676, 20140100677, 20140100678, 20140100679, 20140100680, 20140100681, 20140100682, 20140100683, 20140101316, 20140101317, 20140101318, 20140101319 and 20140101320.

    d. Any portion of subject property lying within the boundaries of a public or private roadway whether dedicated or not.

    e. Easement: Public Utility Easement granted to the City of Houston
Recorded: 8/23/1951 in Volume 2311, Page 160, of the Deed Records, Harris County, Texas.

    f. Easement: Perpetual Easement and Right-of-Way for Drainage and Flood Control granted to the Harris County Flood Control District
Recorded: 6/26/1974 in County Clerk's File No. E189508, of the Official Public Records, Harris County, Texas.

    g. Easement: Electric Distribution Easement granted to Houston Lighting & Power Company
Recorded: 3/21/1977 in County Clerk's File No. F079137, of the Official Public Records, Harris County, Texas.

    h. Easement: Electric Distribution Easement granted to Houston Lighting & Power Company
Recorded: 10/13/1983 in County Clerk's File No. J184709, of the Official Public Records, Harris County, Texas.

    i. Terms, conditions, provisions and stipulations contained within those Consents to Encroachment granted by Houston Lighting & Power Company, recorded under County Clerk's File Nosh. M619255, M651098, M712623 and M732339, all of the Official Public Records of Harris County, Texas.

(This Schedule B is valid only when Cover, Schedule A, C and D are attached)

Form 5025348-B (7-1-14) | T-7 Commitment for Title Insurance (Rev. 1-3-14)
Texas - Schedule B

8300289 v10 (70859.00050.000)

**Exhibit F**      **32/57**

**SCHEDULE B**
(Continued)

j. Terms, conditions, provisions and stipulations contained within those Consents to Encroachment granted by Entex, Inc., as recorded under County Clerk's File Nos. M698402 and M712487, both of the Official Public Records of Harris County, Texas.

k. Terms, conditions, provisions and stipulations contained within that Permission to Build Over City Easement granted by The City of Houston, recorded under County Clerk's File No. M712488, Official Public Records, Harris County, Texas.

l. The property covered herein is subject to the terms, conditions, provisions and stipulations of Ordinance #1999-262, of the City of Houston, passed March 24, 1999, and amendments, pertaining to the platting and replatting of real property and the establishment of building set back lines along major thoroughfares within such boundaries. (OWNER POLICY ONLY)

m. Terms, conditions, and stipulations in the Agreement by and between:

Parties: Jack Lee, Kolee 59 Trust and BDFI, LLC
Recorded: 2/18/2019 in County Clerk's File No. 2019-64357 of the Official Public Records of Harris County, Texas.
Type: Memorandum of Agreement

n. All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records whether listed in Schedule B or not. There may be leases, grants, exceptions or reservations of mineral interest that are not listed.

o. Any titles or rights asserted by anyone, including but not limited to persons, the public, corporations, governments or other entities,
1) to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or
2) to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or
3) to filled-in lands, or artificial islands, or
4) to statutory water rights, including riparian rights, or
5) to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across the area. (MORTGAGEE POLICY ONLY)

(This Schedule B is valid only when Cover, Schedule A, C and D are attached)

| Form 5025348-B (7-1-14) | |
|---|---|
| | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
| | Texas - Schedule B |

8300289 v10 (70859.00050.000)

| *First American Title*™ | Commitment for Title Insurance (T-7) |
|---|---|
| | ISSUED BY<br>**First American Title Insurance Company** |
| **Schedule C** | |

GF No.: 573017-F-TX-CR-GL

Your Policy will not cover loss, costs, attorney's fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1.  Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2.  Satisfactory evidence must be provided that:

    a.  no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

    b.  all standby fees, taxes, assessments and charges against the property have been paid,

    c.  all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, sub-contractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

    d.  there is legal right of access to and from the land,

    e.  (on a Loan Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3.  You must pay the seller or borrower the agreed amount for your property or interest.

4.  Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5.  Record a Release of Deed of Trust to secure a Note:

    Dated: 8/8/2018
    Recorded: 8/9/2018, in County Clerk's File No. RP-2018-362993 of the Official Public Records, Harris County, Texas.
    Amount: $ undisclosed
    Grantor: BDFI, LLC
    Trustee: Geoffrey D. Greenwade
    Beneficiary: Green Bank, N.A.

    Said Note and Deed of Trust modified by Agreement:
    Dated: 12/21/2018

(This Schedule C is valid only when Cover, Schedule A, B and D are attached)

| Form 5025348-C (7-1-14) | | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|---|
| | | Texas - Schedule C |

8300289 v10 (70859.00050.000)

**Exhibit F**                    **34/57**

## SCHEDULE C
### (Continued)

Recorded: 12/21/2018 in County Clerk's File No. RP-2018-571130, of the Official Public records, of Harris County, Texas.

Said Note and Deed of Trust modified by Agreement:
Dated: 12/21/2018
Recorded: 1/14/2019 in County Clerk's File No. RP-2019-16298, of the Official Public records, of Harris County, Texas.

Said Note and Deed of Trust modified by Agreement:
Dated: 3/30/2018
Recorded: 5/7/2019 in County Clerk's File No. RP-2019-187972, of the Official Public records, of Harris County, Texas.

6. Record a Release of Deed of Trust to secure a Note:

Dated: 8/8/2018
Recorded: 12/20/2018, in County Clerk's File No. RP-2018-568982 of the Official Public Records, Harris County, Texas.
Amount: $8,000,000.00
Grantor: BDFI, LLC
Trustee: Xenia Biggs
Beneficiary: Galleria West Loop Investments, LLC

7. Record a Release of Mechanic's and Materialmen's Affidavit and Claim of Lien:
Recorded: 3/26/2019 in County Clerk's File No. RP-2019-117951, of the Official Public records, of Harris County, Texas.
Claimant: ABM
Amount: $177,405.51

8. Record a Release of Mechanic's and Materialmen's Affidavit and Claim of Lien:
Recorded: 4/15/2019 in County Clerk's File No. RP-2019-150032, of the Official Public records, of Harris County, Texas.
Claimant: Williams Communications
Amount: $28,436.59

9. Record a Release of Mechanic's and Materialmen's Affidavit and Claim of Lien:
Recorded: 5/14/2019 in County Clerk's File No. RP-2019-199362, of the Official Public records, of Harris County, Texas.
Claimant: Boxer Property Management Corporation
Amount: $93,060.00

10. Record a Release of Mechanic's and Materialmen's Affidavit and Claim of Lien:
Recorded: 5/17/2019 in County Clerk's File No. RP-2019-208503, of the Official Public records, of Harris County, Texas.
Claimant: Belknap Plumbing
Amount: $49,708.40

11. Record a Release of Mechanic's and Materialmen's Affidavit and Claim of Lien:
Recorded: 8/15/2019 in County Clerk's File No. RP-2019-358409, of the Official Public records, of Harris County, Texas.

(This Schedule C is valid only when Cover, Schedule A, B and D are attached)

Form 5025348-C (7-1-14)　　　　　　　　　　　　T-7 Commitment for Title Insurance (Rev. 1-3-14)

Texas - Schedule C

**SCHEDULE C**
(Continued)

Claimant: Gulf Coast Flooring and Services
Amount: $12,488.26

12.     Record a Release of Tax Lien Contract for Ad Valorem Taxes:

Grantor: BDFI, LLC
Tax Lien Transferee: Caz Creek TX II, LLC
Dated: 1/31/2020
Recorded: 2/11/2020, in County Clerk's File No. RP-2020-63217, of the Official Public Records,
HARRIS County, Texas.
Amount: $514,667.69
Affidavit and certification of Tax Lien Transfer dated 2/11/2020 and recorded 3/11/2020, in County
Clerk's File No. RP-2020-112215, of the Official Public Records, HARRIS County, Texas.


Said lien being assigned to MTAG Services, LLC by Assignment:
Dated: 6/30/2020
Recorded: 7/10/2020 in County Clerk's File No. RP-2020-305791, of the Official Public records,
of Harris County, Texas.


Said lien being assigned to MTAG Services, LLC by Assignment:
Dated: 8/6/2020
Recorded: 8/14/2020 in County Clerk's File No. RP-2020-373184, of the Official Public records,
of Harris County, Texas.

13.     The following is furnished for informational purposes only and no liability shall attach to the company
for any mistake or omission contained therein:

According to a search made of records within our title plant we find no document evidencing a
conveyance of the property described in Schedule "A" within the 36 months prior to the Effective Date
of this commitment.

(This Schedule C is valid only when Cover, Schedule A, B and D are attached)

| Form 5025348-C (7-1-14) | | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
| --- | --- | --- |
| | | Texas - Schedule C |

8300289 v10 (70859.00050.000)

**Exhibit F**       **36/57**

| *First American Title*™ | Commitment for Title Insurance (T-7) |
|---|---|
| | ISSUED BY **First American Title Insurance Company** |
| **Schedule D** | |

File No.: 573017-F-TX-CR-GL

The following disclosures are made pursuant to Procedural Rule P-21 promulgated by the Texas Department of Insurance:

UNDERWRITER: First American Title Insurance Company, a Nebraska Corporation.

Shareholder owning or controlling, directly or indirectly, ten percent or more of the share of the Underwriter: First American Title Insurance Company is a wholly owned subsidiary of First American Title Insurance Company, a public Company formed in Nebraska.

Directors: Dennis J. Gilmore, Jeffrey S. Robinson, Mark E. Seaton, Christopher M. Leavell

Officers:  President: Dennis J. Gilmore; Senior Vice President, Secretary: Jeffrey S. Robinson; and Chief Financial Officer: Max O. Valdes

AGENT: Kensington Vanguard National Land Services of TX, LLC

The following disclosures are made by the Title Insurance Agent issuing this Commitment: Kensington Vanguard National Land Services of Texas, LLC

a. The names of each shareholding, owner, partner or other person having, owing or controlling one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium are as follows: Kensington Vanguard Holdings, LLC

b. Each shareholder, owner, partner or other person having, owning or controlling ten percent (10%) or more of an entity that has, owns or controls one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium are as follows: KV Ultimate Holdings, LLC

c. The following persons are officers and directors of the Title Insurance Agent: Brian Cooper, Co-CEO and Jarett Fein, Co-CEO

You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this commitment relates. Upon your request, such disclosure will be made to you. Additionally, the name of any person, firm or corporation receiving a portion of the premium from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium* is:

| | |
|---|---|
| Owner's Policy | $ 0.00 |
| Loan Policy | $TBD |
| Endorsement Charges | $TBD |
| Other | $ 0.00 |
| Total | $TBD |

Of this total amount 15% will be paid to the policy issuing Title Insurance Company; 85% will be retained by the Title Insurance Agent; and the remainder of the estimated premium will be paid to other parties as follows:

(This Schedule D is valid only when cover, Schedule A, B and C are attached)

Form 5025346-D (7-1-14)

T-7 Commitment for Title Insurance (Rev. 1-3-14)

Texas - Schedule D

8300289 v10 (70859.00050.000)

**Exhibit F**      **37/57**

## SCHEDULE D
### (Continued)

| Amount | To Whom | For Services |
|---|---|---|
| $250.00 | First American Title Insurance Company | Title Evidence |

""The estimated premium is based upon information furnished to us as of the date of this Commitment for Title Insurance. Final determination of the amount of the premium will be made at closing in accordance with the Rules and Regulations adopted by the Commissioner of Insurance."

(This Schedule D is valid only when cover, Schedule A, B and C are attached)

| Form 5025348-D (7-1-11) | T-7 Commitment for Title Insurance (Rev. 1-3-14) |
|---|---|
| | Texas - Schedule D |

38

8300289 v10 (70859.00050.000)



**First American Title Insurance Company**

**Commitment for Title Insurance Form (T-7)**

**DELETION OF ARBITRATION PROVISION**
(Not applicable to the Texas Residential Owner's Policy)

ARBITRATION is a common form of alternative dispute resolution. It can be a quicker and cheaper means to settle a dispute with your Title Insurance Company. However, if you agree to arbitrate, you give up your right to take the Title Insurance Company to court and your rights to discovery of evidence may be limited in the arbitration process. In addition, you cannot usually appeal an arbitrator's award.

**Your policy contains an arbitration provision (shown below). It allows you or the Company to require arbitration if the amount of Insurance is $2,000,000 or less. If you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued. You can do this by signing this form and returning it to the Company at or before the closing of your real estate transaction or by writing to the Company.**

The arbitration provision in the Policy is as follows:

"Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction."

SIGNATURE _____

DATE _____

Form 5025348-DOA (7-1-14)

T-7 Commitment for Title Insurance (Rev. 1-3-14)
Texas - Deletion of Arbitration

39

8300289 v10 (70859.00050.000)

**Exhibit F**        **39/57**

## PRIVACY POLICY

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. We have also adopted broader guidelines that govern our use of personal information regardless of its source.

**Types of Information** Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms or in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliate companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliate companies, or to other financial institutions with whom we or our affiliate companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

8300289 v10 (70859.00050.000)

**Exhibit F**                                          **40/57**

## EXHIBIT B

**Tax Loan Documents and Second Tax Loan Documents**

*(See attached pages)*

8300289 v10 (70859.00050.000)

RP-2020-63217
02/11/2020 ER $28.00

## TAX LIEN CONTRACT ("Contract")

| | |
|---|---|
| **Date:** | 01/31/2020 |
| **Loan Number:** | 20018212 |
| **Property Owner:** (whether one or more) | BDPI LLC 1001 W Loop S Houston, TX 77027 |
| **Tax Lien Transferee:** | Caz Creek TX II, LLC 14800 Landmark Blvd, Suite 400 Dallas, TX 75254 |
| **Tax Payment Agreement:** | Date: 01/31/2020 |
| | Tax Obligation: $514,667.69 (original amount) |

Property (including any improvements) located in **Harris County**, Texas and described as follows:

See Exhibit A Which is Attached Hereto

Located at: 50 Briar Hollow Lane, Houston, TX 77027

1. Pursuant to § 32.06, Texas Tax Code, Property Owner by execution of a sworn document did authorize Tax Lien Transferee to pay ad valorem taxes, penalties, interest and costs due on the Property to certain taxing units. Such sworn authorization permits the taxing units to transfer the tax liens on the Property to Tax Lien Transferee to secure payment of the Tax Obligation. Property Owner also executed the Tax Payment Agreement, and under its terms Property Owner shall pay to Tax Lien Transferee the Tax Obligation. The terms of the Tax Payment Agreement are incorporated herein.

2. In compliance with § 32.06 and § 32.065, Texas Tax Code, this Contract further secures the special tax lien against the Property transferred to Tax Lien Transferee for the Tax Obligation and secures the payment of all amounts previously or hereafter advanced, charged, or incurred in connection with transferred lien(s), this Contract, the Tax Payment Agreement, or modifications thereof, as agreed to by Property Owner, including taxes, penalties, interest, costs, fees, post-closing costs and fees, or other charges as permitted by law. Tax Lien Transferee is subrogated to rights, liens, remedies, and equities of the taxing units paid, and the same are renewed and extended by this Contract until all obligations under the Tax Payment Agreement are satisfied and paid in full.

3. An "Event of Default" is any failure by Property Owner to perform under this Contract or the Tax Payment Agreement. Upon an Event of Default, Tax Lien Transferee may proceed to foreclose its tax lien under any method provided in § 32.06(c), Texas Tax Code. In accordance with section 32.06, Texas Tax Code, Property Owner hereby waives the requirement that Tax Lien Transferee wait one year from the date the tax lien transfer is recorded before instituting foreclosure following a default and acceleration. This Contract shall not restrict Tax Lien Transferee from pursuing any remedy to which it is otherwise entitled by law.

4. This Contract shall be recorded in each county in which the Property is located. When the context requires, singular nouns and pronouns include the plural.

Contract Page 1

42 8300289 v10 (70859.00050.000)

**Exhibit F** **42/57**



Ali Choudhri, Manager of BDFI LLC

STATE OF TEXAS
COUNTY OF HARRIS

This instrument was acknowledged before me on _July 31, 2020_ by Ali Choudhri, Manager of BDFI LLC.

STEPHANIE A. GALLEGOS
Notary Public, State of Texas
Comm. Expires 12-29-2023
Notary ID 125188127

Notary Public, State of Texas

AFTER RECORDING, RETURN DOCUMENT TO: Caz Creek TX II, LLC, 14800 Landmark Blvd Suite 400, DALLAS, TX 75254

RP-2020-63217

Contract Page 2

43

8300289 v10 (70859.00050.000)

Exhibit F                                    43/57

BDFI INC.
50 BRIAR HOLLOW LANE
HOUSTON, TEXAS 77027
PARCEL I.D. # 0451400020105

## EXHIBIT A

BEING TRACTS 9B, 13 AND 13A OF THE W. WHITE ABSTRACT 826, HARRIS
COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES
AND BOUNDS AS FOLLOWS:

All that certain 3.1708 acres of land out of Lot 9, Roy B. Nichols Subdivision according to the plat thereof filed at
Volume 321; Page 431 Harris County Deed Records being the same property described in a deed dated 12-29-1994
from 50 B.H. Inc. to BNS Buildings, Inc., filed in the Official Public Records of Harris County, Texas at Clerk File
No. R208710, Film Code No. 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, and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8 inch iron rod marking the southeast corner of the end of Emmet Lane (30 feet wide)
also being the most southerly southwest corner of Briar Hollow, according to the plat thereof filed at Volume 32,
Page 61 Harris County Map Records;

THENCE S 89 degrees 56 minutes 00 seconds E-457.91 feet, with the south line of said Briar Hollow, to a found
5/8 inch iron rod with cap for corner;

THENCE along the centerline meanders of Briar Hollow Gully the following ten (10) courses and distances:

S 04 degrees 18 minutes 21 seconds W-75.54 feet to a found 5/8 inch iron rod with cap for angle point;

S 70 degrees 53 minutes 35 seconds W-28.65 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 51 degrees 01 minutes 16 minutes W-71.17 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 12 degrees 39 minutes 40 seconds E-80.46 feet to a found 5/8 inch iron rod with cap for angle point;

S 24 degrees 34 minutes 52 seconds W-15.47 feet to a found 5/8 inch iron rod with cap for angle point;

S 59 degrees 41 minutes 53 seconds W-15.10 feet to a found 5/8 inch iron rod with cap for angle point;

S 84 degrees 15 minutes 45 seconds W-11.90 feet to a found 5/8 inch iron rod with cap for angle point;

N 65 degrees 48 minutes 54 seconds W-29.20 feet to a called and found 1-1/4 inch iron pipe for angle point;

N 89 degrees 36 minutes 28 seconds W-53.02 feet to a found 5/8 inch iron rod with cap for angle point;

S 74 degrees 28 minutes 23 seconds W-77.11 feet to a found 5/8 inch iron rod with cap for corner;

THENCE N 25 degrees 50 minutes 33 seconds W-77.33 feet, with the south line of that certain 3.2309 acre tract as
described in a Substitute Trustee's Deed dated 1-3-1989 from Mark D. Stone, Substitute Trustee to New England
Mutual Life Insurance Company filed in the Official Public Records of Real Property of Harris County, Texas at
Clerk File No. L995411, Film Code No. 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, to a found 5/8 inch iron rod with cap for corner;

THENCE N 78 degrees 28 minutes 22 seconds W-97.76 feet, continuing with the south line of said 3.2309 acre
tract, to a found 5/8 inch iron rod for angle point;

RP-2020-63217

44                                    8300289 v10 (70859.00050.000)

THENCE N 89 degrees 39 minutes 54 seconds W-113.14 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod with cap for angle point;

THENCE N 89 degrees 56 minutes 00 seconds W-348.00 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod with cap for corner;

THENCE N 01 degrees 21 minutes 00 seconds E-140.00 feet, with the east right-of-way line of Briar Hollow Lane (60 feet wide), to a found 5/8 inch iron rod with cap for corner;

THENCE N 45 degrees 42 minutes 30 seconds E-14.30 feet, with a cut-back corner for Emmet Lane, to a found 5/8 inch iron rod for corner;

THENCE S 89 degrees 56 minutes 00 seconds E-374.89 feet, with the south right-of-way line of said Emmet Lane, to the POINT OF BEGINNING and containing 3.1708 acres (138,119 square feet) of land, more or less.

RP-2020-63217

45                                        8300289 v10 (70859.00050.000)



**Exhibit F                                        45/57**

RP-2020-63217

RP-2020-63217
# Pages 5
02/11/2020 01:45 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
DIANE TRAUTMAN
COUNTY CLERK
Fees  $28.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

8300289 v10 (70859.00050.000)

**Exhibit F**                                    **46/57**

**ANN HARRIS BENNETT**
Tax Assessor-Collector

RP-2020-112215
03/11/2020  ER  $20.00

| | |
|---|---|
| **STATE OF TEXAS** | § |
| **COUNTY OF HARRIS** | § |

Date: February 11, 2020

### CERTIFIED STATEMENT OF TRANSFER OF TAX LIEN

Account Number: 045-140-002-0105

Legal Description: TRS 9B 13 & 13A ABST 826 W WHITE

Street Address (if applicable): 50 BRIAR HOLLOW LN

Taxing Unit(s): City Of Houston, Harris County, Harris County Dept. Of Education, Harris County Flood Control Dist, Harris County Hospital District, Houston Community College System, Houston I.S.D., Port Of Houston Authority

Tax Year(s) Paid: 2019

Amount Paid for Transfer (including taxes, penalties, interest and collection costs): $513,688.69

Property Owner(s)' Name(s): BDFI LLC
720 N POST OAK RD 500

Transferee's Name: CAZ CREEK TX II, LLC

Transferee's Street Address: 14800 LANDMARK BLVD STE 400
DALLAS TX 75254

I, Ann Harris Bennett, Tax Assessor-Collector for Harris County, and for all taxing units for which the Office of the Harris County Tax Assessor-Collector collects ad valorem taxes, certify that the above named transferee or transferee's agent ("Transferee") has made payment of the amount listed above to the above named taxing units on the property described above as consideration for a transfer of the tax lien(s), and that the tax lien(s) held by taxing units on the property for the tax years listed above are hereby transferred to Transferee in accordance with Texas Tax Code §32.06. I have issued a receipt to Transferee in conjunction with this certification reflecting the payment for the transfer in the amount of taxes, penalties, interest, and collection costs.



Ann Harris Bennett
Harris County Tax Assessor-Collector

BY: _____
Deputy

AFTER RECORDING, RETURN TO:
CAZ CREEK TX II, LLC
14800 LANDMARK BLVD STE 400
DALLAS TX 75254

125

8300289 v10 (70859.00050.000)

## SWORN DOCUMENT AUTHORIZING TRANSFER OF TAX LIEN

| | |
|---|---|
| STATE OF TEXAS § | After recording, return to:<br>Caz Creek TX II, LLC<br>14800 Landmark Blvd, Suite 400<br>Dallas, TX 75254 |
| COUNTY OF HARRIS § | |

Before me, the undersigned notary, on this day personally appeared Ali Choudhri, Manager of BDFI LLC, known to me to be the person(s) whose name(s) is/are subscribed below, and being duly sworn, upon oath deposed and stated as follows:

"My name is Ali Choudhri, Manager of BDFI LLC. I am over 18 years of age and am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct. I or the entity I represent owns the real property described as follows:

| | |
|---|---|
| Account No. or Property ID No.: | '0451400020105 |
| Legal Description: | TRS 9B 13 & 13A ABST 826 W WHITE |
| Street Address, if applicable: | 50 BRIAR HOLLOW LN HOUSTON TX 77027 |
| Amount Paid for Transfer: | $ 513,688.69 (including taxes, penalties, interest, & collection costs) |
| Tax Year(s): | 2019 |
| Transferee's Name: | Caz Creek TX II, LLC |
| OCCC Property Tax License Lender No.: | 1800062523-161548 |
| Transferee's Street Address: | 14800 Landmark Blvd, Suite 400, Dallas, TX 75254 |

"Pursuant to Texas Tax Code §32.06, I hereby authorize the above-named transferee or transferee's agent (the "Transferee"), to pay all taxes, penalties, interest, and collection costs imposed by any and all local taxing units or their agents on the real property, described above, for the tax years listed above. I further authorize and direct the tax assessor-collector(s) for said taxing units to issue a tax receipt with the collector's seal of office or notarized signature to the Transferee and to certify that the taxes and any penalties and interest on the subject property and collection costs have been paid by the transferee on behalf of the owner, and the tax lien on the owner's property has been transferred to the Transferee.

"I have been given notice that if this property is my homestead and I am disabled, I may be eligible for a tax deferral under Texas Tax Code §33.06."

Property Owner
OR Authorized
Representative      Name:  Ali Choudhri, Manager of BDFI LLC

Date Signed  1/31/20

STATE OF TEXAS
COUNTY OF HARRIS

Subscribed and sworn to before me on 1/31/20 by Ali Choudhri, Manager of BDFI LLC.

NOTARY PUBLIC, STATE OF TEXAS

STEPHANIE A. GALLEGOS
Notary Public, State of Texas
Comm. Expires 12-29-2023
Notary ID 125186127

Account # 20018212 (County)
Current: 01/31/2020 / Original: //

RP-2020-112215

RP-2020-112215
# Pages 3
03/11/2020 02:46 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
DIANE TRAUTMAN
COUNTY CLERK
Fees  $20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

8300289 v10 (70859.00050.000)

RP-2021-124742
03/10/2021 ER $30.00

## TAX LIEN CONTRACT ("Contract")

| | |
|---|---|
| **Date:** | 02/27/2021 |
| **Loan Number:** | TX20120011CC |
| **Property Owner:** (whether one or more) | BDFI LLC 1001 West Loop Suite 700 Houston, Texas 77027 |
| **Tax Lien Transferee:** | Caz Creek TX II LLC 14800 Landmark Blvd, Suite 400 Dallas, TX 75254 |
| **Tax Payment Agreement:** | Date: 02/27/2021 |
| | Tax Obligation: $1,090,831.36 (original amount) |

**Property (including any improvements) located in Harris County, Texas and described as follows:**

SEE EXHIBIT "A" WHICH IS ATTACHED HERETO.

Located at: 50 Briar Hollow Ln, Houston, Texas 77027

1. Pursuant to § 32.06, Texas Tax Code, Property Owner by execution of a sworn document did authorize Tax Lien Transferee to pay ad valorem taxes, penalties, interest and costs due on the Property to certain taxing units. Such sworn authorization permits the taxing units to transfer the tax liens on the Property to Tax Lien Transferee to secure payment of the Tax Obligation. Property Owner also executed the Tax Payment Agreement, and under its terms Property Owner shall pay to Tax Lien Transferee the Tax Obligation. The terms of the Tax Payment Agreement are incorporated herein.

2. In compliance with § 32.06 and § 32.065, Texas Tax Code, this Contract further secures the special tax lien against the Property transferred to Tax Lien Transferee for the Tax Obligation and secures the payment of all amounts previously or hereafter advanced, charged, or incurred in connection with transferred lien(s), this Contract, the Tax Payment Agreement, or modifications thereof, as agreed to by Property Owner, including taxes, penalties, interest, costs, fees, post-closing costs and fees, or other charges as permitted by law. Tax Lien Transferee is subrogated to rights, liens, remedies, and equities of the taxing units paid, and the same are renewed and extended by this Contract until all obligations under the Tax Payment Agreement are satisfied and paid in full.

3. An "Event of Default" is any failure by Property Owner to perform under this Contract or the Tax Payment Agreement. Upon an Event of Default, Tax Lien Transferee may proceed to foreclose its tax lien under any method provided in § 32.06(c), Texas Tax Code. In accordance with section 32.06, Texas Tax Code, Property Owner hereby waives the requirement that Tax Lien Transferee wait one year from the date the tax lien transfer is recorded before instituting foreclosure following a default and acceleration. This Contract shall not restrict Tax Lien Transferee from pursuing any remedy to which it is otherwise entitled by law.

4. This Contract shall be recorded in each county in which the Property is located. When the context requires, singular nouns and pronouns include the plural.

5. In addition to the funds advanced to transfer property tax liens, the Transferee also advanced a portion of the funds to consolidate funds advanced for liens previously transferred by the Property Owners and secured by the contract(s) dated, for funds advanced of, recorded under document no(s). and existing transferred property tax liens recorded under document no(s). listed below:

| Date | Funds Advanced | Contract Recording # | TLT Recording #s |
|---|---|---|---|
| 01/31/2020 | $514,667.69 | RP-2020-63217 | RP-2020-112215 |

all in the Real Property Records of Harris County, Texas. Transferee is subrogated to the rights of any lienholder paid. All such existing liens are carried forward in full force and effect to secure the Tax Payment Agreement. Property Owners agree that this Contract preserves and extends the superior priority of all such existing liens, and that all such liens may be enforced to secure payment of the Tax Payment Agreement under the terms and conditions of this Contract and §32.06 and §32.065, Texas Tax Code.

Contract Page 1

8300289 v10 (70859.00050.000)

_____
Ali Choudhri, Manager of BDFI L.L.C

STATE OF TEXAS
COUNTY OF HARRIS

This instrument was acknowledged before me on February 27, 2021 _____ by Ali Choudhri, Manager of BDFI L.L.C.

_____
Notary Public, State of TEXAS

AFTER RECORDING, RETURN DOCUMENT TO: Caz Creek TX II L.L.C, 14800 Landmark Blvd, Suite 400, Dallas, TX 75254

RP-2021-124742

Contract - Page 2

51                    8300289 v10 (70859.00050.000)

BDFI INC.
50 BRIAR HOLLOW LANE, HOUSTON, TEXAS
PARCEL I.D. # 0451400020105

## EXHIBIT A

BEING TRACTS 9B, 13 AND 13A OF THE W. WHITE ABSTRACT 826, HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

All that certain 3.1708 acres of land out of Lot 9, Roy B. Nichols Subdivision according to the plat thereof filed at Volume 321, Page 431 Harris County Deed Records being the same property described in a deed dated 12-29-1994 from 50 B.H. Inc. to BNS Buildings, Inc., filed in the Official Public Records of Harris County, Texas at Clerk File No. R208710, Film Code No. 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, and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8 inch iron rod marking the southeast corner of the end of Emmel Lane (30 feet wide) also being the most southerly southwest corner of Briar Hollow, according to the plat thereof filed at Volume 32, Page 61 Harris County Map Records;

THENCE S 89 degrees 56 minutes 00 seconds E-457.91 feet, with the south line of said Briar Hollow, to a found 5/8 inch iron rod with cap for corner;

THENCE along the centerline meanders of Briar Hollow Gully the following ten (10) courses and distances:

S 04 degrees 18 minutes 21 seconds W-75.54 feet to a found 5/8 inch iron rod with cap for angle point;

S 70 degrees 53 minutes 35 seconds W-28.65 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 51 degrees 01 minutes 16 minutes W-71.17 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 12 degrees 39 minutes 40 seconds E-80.46 feet to a found 5/8 inch iron rod with cap for angle point;

S 24 degrees 34 minutes 52 seconds W-15.47 feet to a found 5/8 inch iron rod with cap for angle point;

S 59 degrees 41 minutes 53 seconds W-15.10 feet to a found 5/8 inch iron rod with cap for angle point;

S 84 degrees 15 minutes 45 seconds W-11.90 feet to a found 5/8 inch iron rod with cap for angle point;

N 65 degrees 48 minutes 54 seconds W-29.20 feet to a called and found 1-1/4 inch iron pipe for angle point;

N 89 degrees 36 minutes 28 seconds W-53.02 feet to a found 5/8 inch iron rod with cap for angle point;

S 74 degree 28 minutes 23 seconds W-77.11 feet to a found 5/8 inch iron rod with cap for corner;

THENCE N 25 degrees 50 minutes 33 seconds W-77.33 feet, with the south line of that certain 3.2309 acre tract as described in a Substitute Trustee's Deed dated 1-3-1989 from Mark D. Stout, Substitute Trustee to New England Mutual Life Insurance Company filed in the Official Public Records of Real Property of Harris County, Texas at Clerk File No. L995411, Film Code No. 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, to a found 5/8 inch iron rod with cap for corner;

THENCE N 78 degrees 28 minutes 22 seconds W-97.76 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod for angle point;

RP-2021-124742



52                    8300289 v10 (70859.00050.000)

THENCE N 89 degrees 39 minutes 54 seconds W-113.14 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod with cap for angle point;

THENCE N 89 degrees 56 minutes 00 seconds W-348.00 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod with cap for corner;

THENCE N 01 degrees 21 minutes 00 seconds E-140.00 feet, with the east right-of-way line of Briar Hollow Lane (60 feet wide), to a found 5/8 inch iron rod with cap for corner;

THENCE N 45 degrees 42 minutes 30 seconds E-14.30 feet, with a cut-back corner for Emmet Lane, to a found 5/8 inch iron rod for corner;

THENCE S 89 degrees 56 minutes 00 seconds E-374.89 feet, with the south right-of-way line of said Emmet Lane, to the POINT OF BEGINNING and containing 3.1708 acres (138,119 square feet) of land, more or less.

RP-2021-124742

OFFICIAL COPY

53

8300289 v10 (70859.00050.000)

RP-2021-124742

RP-2021-124742
# Pages 5
03/10/2021 02:55 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees   $30.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

54                    8300289 v10 (70859.00050.000)

**Exhibit F**                                    **54/57**

RP-2021-221214
04/23/2021  ER  $22.00

## ANN HARRIS BENNETT
Tax Assessor-Collector

STATE OF TEXAS §

COUNTY OF HARRIS §

Date: March 22, 2021

### CERTIFIED STATEMENT OF TRANSFER OF TAX LIEN

| | |
|---|---|
| Account Number: | 045-140-002-0105 |
| Legal Description: | TRS 9B 13 & 13A ABST 826 W WHITE |
| Street Address (if applicable): | 50 BRIAR HOLLOW LN |
| Taxing Unit(s): | City Of Houston, Harris County, Harris County Dept. Of Education, Harris County Flood Control Dist, Harris County Hospital District, Houston Community College System, Houston I.S.D., Port Of Houston Authority |
| Tax Year(s) Paid: | 2020 |
| Amount Paid for Transfer (including taxes, penalties, interest and collection costs): | $531,695.66 |
| Property Owner(s)' Name(s): | BDFI LLC<br>720 N POST OAK RD 500 |
| Transferee's Name: | CAZ CREEK TX II, LLC |
| Transferee's Street Address: | 14800 LANDMARK BLVD STE 400<br>DALLAS TX 75254 |

I, Ann Harris Bennett, Tax Assessor-Collector for Harris County, and for all taxing units for which the Office of the Harris County Tax Assessor-Collector collects ad valorem taxes, certify that the above named transferee or transferee's agent ("Transferee") has made payment of the amount listed above to the above named taxing units on the property described above as consideration for a transfer of the tax lien(s), and that the tax lien(s) held by taxing units on the property for the tax years listed above are hereby transferred to Transferee in accordance with Texas Tax Code §32.06. I have issued a receipt to Transferee in conjunction with this certification reflecting the payment for the transfer in the amount of taxes, penalties, interest, and collection costs.



AFTER RECORDING, RETURN TO:
CAZ CREEK TX II, LLC
14800 LANDMARK BLVD STE 400
DALLAS TX 75254

Ann Harris Bennett
Harris County Tax Assessor-Collector

BY: _____
Deputy

1.25

55

8300289 v10 (70859.00050.000)

**Exhibit F**

**55/57**

**SWORN DOCUMENT AUTHORIZING TRANSFER OF TAX LIEN**

STATE OF TEXAS            §

COUNTY OF HARRIS       §

After recording, return to:
Caz Creek TX II LLC
14800 Landmark Blvd. Suite 400
Dallas, TX 75254

Before me, the undersigned notary, on this day personally appeared Ali Choudhri, Manager of BDFI L.L.C. known to me to be the person(s) whose name(s) is/are subscribed below, and being duly sworn, upon oath deposed and stated as follows:

"My name is Ali Choudhri, Manager of BDFI L.L.C. I am over 18 years of age and am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct. I or the entity I represent owns the real property described as follows:

| | |
|---|---|
| Account No. or Property ID No.: | 0451400020105 |
| Legal Description: | TRS 9B 13 & 13A ABST 826 W WHITE |
| Street Address, if applicable: | 50 Briar Hollow Ln Houston Texas 77027 |
| Amount Paid for Transfer: | $531,665.09 (including taxes, penalties, interest, & collection costs) |
| Tax Year(s): | 2020 |
| Transferee's Name: | Caz Creek TX II LLC |
| OCCC Property Tax License Lender No.: | 1800062523-161548 |
| Transferee's Street Address: | 14800 Landmark Blvd, Suite 400, Dallas, TX 75254 |

"Pursuant to Texas Tax Code §32.06, I hereby authorize the above-named transferee or transferee's agent (the "Transferee"), to pay all taxes, penalties, interest, and collection costs imposed by any and all local taxing units or their agents on the real property, described above, for the tax years listed above. I further authorize and direct the tax assessor-collector(s) for said taxing units to issue a tax receipt with the collector's seal of office or notarized signature to the Transferee and to certify that the taxes and any penalties and interest on the subject property and collection costs have been paid by the transferee on behalf of the owner, and the tax lien on the owner's property has been transferred to the Transferee.

"I have been given notice that if this property is my homestead and I am disabled, I may be eligible for a tax deferral under Texas Tax Code §33.06."

RP-2021-221214

Property Owner
OR Authorized
Representative    Name:    Ali Choudhri, Manager of BDFI L.L.C      *mbr*

Date Signed    2-27-21

STATE OF TEXAS
COUNTY OF HARRIS

Subscribed and sworn to before me on 2/27/21 by Ali Choudhri, Manager of BDFI L.L.C.

NOTARY PUBLIC, STATE OF TEXAS

DANIELLE HOUSTON
NOTARY PUBLIC
STATE OF TEXAS
ID 12876914
EXP. 11-03-2023

Loan # TX2012001 ICC (Entity 1)
Current 02/27/2021

56

8300289 v10 (70859.00050.000)

RP-2021-221214

RP-2021-221214
# Pages 3
04/23/2021 01:23 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $22.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.





COUNTY CLERK
HARRIS COUNTY, TEXAS

57                              8300289 v10 (70859.00050.000)

**Exhibit F**                    **57/57**

# Exhibit F-1

**First Amendment to
Second Forbearance Agreement**

## FIRST AMENDMENT TO SECOND FORBEARANCE AGREEMENT

This First Amendment to Second Forbearance Agreement (this "First Amendment") is made and entered into effective the 1st day of October, 2021 (the "Effective Date"), by and among BDFI LLC, a New York limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Veritex Community Bank, a Texas state bank ("Lender"), successor in interest by merger to Green Bank, N.A., a national banking association ("Original Lender").

**WHEREAS**, Lender, Borrower and Guarantor have entered into that certain Second Forbearance Agreement, dated April 26, 2021 (the "SFA"), and now desire to amend the SFA to extend certain dates by which certain actions or payments must be taken or made pursuant to the SFA.

**NOW THEREFORE**, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Lender, Borrower and Guarantor hereby agree as follows:

1.      The first sentence of Section 1 of the SFA is hereby amended and restated in its entirety to read as follows:

"1.      Agreement to Forbear. During the period commencing on the date hereof and ending on the earlier to occur of 5:00 p.m. Dallas, Texas time on December 15, 2021 (the "Second Forbearance Termination Time"), or the date that any Forbearance Default (as defined in Section 11 hereof) occurs (herein collectively, the "Second Forbearance Period"), and subject to the other terms and conditions of this Agreement, Lender agrees that with respect to the Existing Events of Default and Section 3(d) and (e) Obligations, it will forbear from (w) exercising Lender's Enforcement Rights and (x) marketing or selling the Note and Loan to a third party."

2.      Paragraph 3(c) of the SFA is hereby amended and restated in its entirety to read as follows:

"(c)      Payment in Full. Borrower shall pay all amounts outstanding under the Loan, including but not limited to, all principal and interest due under the Note, on or before the expiration of the Second Forbearance Period; provided, however, if on or prior to November 30, 2021 Borrower has made all payments required under the Loan Documents as modified by the First Forbearance Agreement and this Agreement and there shall exist no Forbearance Default under this Agreement, then at such time, Borrower shall be entitled to obtain a full pay off of the Loan for the aggregate amount of (i) the then existing unpaid principal balance of the Note plus (ii) all accrued and unpaid interest at the Stated Rate minus (iii) the amount of $4,900,000.00 (the terms of the immediately preceding proviso in this Section 3(c) being herein referred to as the "Principal Forgiveness Provision"); provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement [Borrower's bankruptcy], Borrower, shall be entitled to the lesser of (x) a thirty (30) day cure period after receipt of notice from Lender or (y) any cure period that is already set forth in the Loan Documents that is applicable to such non-monetary default."

8791053 v1 (70859.00050.000)

**Exhibit F-1**                                                                1/3

3.  In consideration for the extensions set forth above, Borrower agrees to make a $100,000.00 principal payment reduction on the Note (as defined in the SFA), which Lender acknowledges receipt of such payment.

4.  Lender, Borrower and Guarantor agree there are no other changes to the SFA and hereby ratify the SFA as modified by this First Amendment.

[*Signature Page follows.*]

8791053 v1 (70859.00050.000)

**Exhibit F-1**                                    **2/3**

IN WITNESS WHEREOF, Lender, Borrower and Guarantor have executed this First Amendment as of the date first written above.

**LENDER:**

VERITEX COMMUNITY BANK,
a Texas state-chartered bank

By: _____
Michael Carp
Executive Vice President, Director of
Special Assets

**BORROWER:**

BDFI LLC,
a New York limited liability company

By:_____
Ali Choudhri,  sole Manager and Member

**GUARANTOR:**

_____
Ali Choudhri, individually

8791053 v1 (70859.00050.000)

**Exhibit F-1**                                        **3/3**

# Exhibit F-2

**Second Amendment to
Second Forbearance Agreement**

## SECOND AMENDMENT TO SECOND FORBEARANCE AGREEMENT

This Second Amendment to Second Forbearance Agreement (this "Second Amendment") is made and entered into effective the 20th day of December, 2021 (the "Effective Date"), by and among BDFI LLC, a New York limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Veritex Community Bank, a Texas state bank ("Lender"), successor in interest by merger to Green Bank, N.A., a national banking association ("Original Lender").

**WHEREAS**, Lender, Borrower and Guarantor have entered into that certain Second Forbearance Agreement, dated April 26, 2021, as amended pursuant to that certain First Amendment to Second Forbearance Agreement, dated October 1, 2021 (collectively, the "SFA"), and now desire to amend the SFA to extend certain dates by which certain actions or payments must be taken or made pursuant to the SFA.

**NOW THEREFORE**, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Lender, Borrower and Guarantor hereby agree as follows:

1.      The first sentence of Section 1 of the SFA is hereby amended and restated in its entirety to read as follows:

"1.      Agreement to Forbear. During the period commencing on the date hereof and ending on the earlier to occur of 5:00 p.m. Dallas, Texas time on March 15, 2022 (the "Second Forbearance Termination Time"), or the date that any Forbearance Default (as defined in Section 11 hereof) occurs (herein collectively, the "Second Forbearance Period"), and subject to the other terms and conditions of this Agreement, Lender agrees that with respect to the Existing Events of Default and Section 3(d) and (e) Obligations, it will forbear from (w) exercising Lender's Enforcement Rights and (x) marketing or selling the Note and Loan to a third party."

2.      Paragraph 3(c) of the SFA is hereby amended and restated in its entirety to read as follows:

"(c)      Payment in Full. Borrower shall pay all amounts outstanding under the Loan, including but not limited to, all principal and interest due under the Note, on or before the expiration of the Second Forbearance Period; provided, however, if on or prior to February 28, 2022 Borrower has made all payments required under the Loan Documents as modified by the First Forbearance Agreement and this Agreement and there shall exist no Forbearance Default under this Agreement, then at such time, Borrower shall be entitled to obtain a full pay off of the Loan for the aggregate amount of (i) the then existing unpaid principal balance of the Note plus (ii) all accrued and unpaid interest at the Stated Rate minus (iii) the amount of $4,900,000.00 (the terms of the immediately preceding proviso in this Section 3(c) being herein referred to as the "Principal Forgiveness Provision"); provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement [Borrower's bankruptcy], Borrower, shall be entitled to the lesser of (x) a thirty (30) day

8925580 v1 (70859.00050.000)

**Exhibit F-2**                                                   **1/3**

cure period after receipt of notice from Lender or (y) any cure period that is already set forth in the Loan Documents that is applicable to such non-monetary default."

3.     In consideration for the extensions set forth above, prior to the date of this Second Amendment, Borrower agrees to:

    a.  Deliver to Lender a principal payment in the amount of $375,000.00 in reduction on the Note (as defined in the SFA), which Lender acknowledges receipt of such payment.

    b.  Deliver to Lender the financial statements covering the Property (as defined in the SFA) for (i) the calendar quarter ending September 30, 2021 and (ii) the calendar month ending September 30, 2021), which Lender acknowledges receipt of such financials.

    c.  Deliver to Lender a payment in the amount of all accrued interest under the Loan for the months of October 2021 and November 2021), which Lender acknowledges receipt of such payment.

4.     Lender, Borrower and Guarantor agree there are no other changes to the SFA and hereby ratify the SFA as modified by this Second Amendment.

*[Signature Page follows.]*

**Exhibit F-2**

IN WITNESS WHEREOF, Lender, Borrower and Guarantor have executed this Second Amendment as of the date first written above.

**LENDER:**

VERITEX COMMUNITY BANK,
a Texas state-chartered bank

By: _____
Michael Carp
Executive Vice President, Director of
Special Assets

**BORROWER:**

BDFI LLC,
a New York limited liability company

By:_____
Ali Choudhri,  sole Manager and Member

**GUARANTOR:**

_____
Ali Choudhri, individually

8925580  (70859.00050.000)

**Exhibit F-2**                                        **3/3**

# Exhibit F-3

**Third Amendment to
Second Forbearance Agreement**

## THIRD AMENDMENT TO SECOND FORBEARANCE AGREEMENT

This Third Amendment to Second Forbearance Agreement (this "Third Amendment") is made and entered into effective the _10th_ day of March, 2022 (the "Effective Date"), by and among BDFI LLC, a New York limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Veritex Community Bank, a Texas state bank ("Lender"), successor in interest by merger to Green Bank, N.A., a national banking association ("Original Lender").

WHEREAS, Lender, Borrower and Guarantor have entered into that certain Loan Agreement, dated March 9, 2018 (the "Loan Agreement"), as amended pursuant to that certain First Forbearance Agreement (the "FFA"), and that certain Second Forbearance Agreement, dated April 26, 2021, together with that certain First Amendment to Second Forbearance Agreement, dated October 1, 2021 and the Second Amendment to Second Forbearance Agreement, dated December 8, 2021 (collectively, the "SFA"), and now desire to amend the Loan Agreement, the FFA and the SFA as necessary to alter the terms and extend certain dates by which certain actions must be taken or payments must be made pursuant to the Loan Agreement and the SFA.

NOW THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Lender, Borrower and Guarantor hereby agree as follows:

1.     The first sentence of Section 11 of the SFA is hereby amended and restated in its entirety to read as follows:

"11. Forbearance Default. Each of the following listed below in this Section 11 shall constitute a "Forbearance Default" under this Agreement (x) upon Borrower's failure to cure any breach of any covenant, agreement, or representation by Borrower or Guarantor under any of Loan Documents or this Agreement ("Non-Monetary Default") within thirty (30) days of receipt of written notice from Lender to Borrower of such breach or (y) immediately upon Borrower's failure to pay any amounts due under any of Loan Documents or this Agreement ("Monetary Default"), including the following:"

2.     The first sentence of Section 1 of the SFA is hereby amended and restated in its entirety to read as follows:

"1.     Agreement to Forbear. During the period commencing on the date hereof and ending on the earlier to occur of 5:00 p.m. Dallas, Texas time on June 15, 2022 (the "Second Forbearance Termination Time"), or the date that any Forbearance Default (as defined in Section 11 of this Agreement) occurs (herein collectively, the "Second Forbearance Period"), and subject to the other terms and conditions of this Agreement, Lender agrees that with respect to the Existing Events of Default and the Section 3(d) and (e) Obligations, it will forbear from (w) exercising Lender's Enforcement Rights and (x) marketing or selling the Note and Loan to a third party."

9111317 v2 (70859.00050.000)

**Exhibit F-3**                                    **1/4**

3.      Sections 3(b) and 3(c) of the SFA are hereby amended and restated in their entirety to read as follows:

"(b)    Consolidated Tax Loans. Borrower shall pay all payments on the Tax Loan (as defined in the First Forbearance Agreement), a second tax loan obtained by Borrower from Caz Creek TX II, LLC and a third tax loan obtained by Borrower from Caz Creek TX II, LLC in a consolidated aggregate amount of $1,587,121.65 (the "Consolidated Tax Loans") as and when they become due and payable and furnish to Lender proof, acceptable to Lender, of the payment in full of the Consolidated Tax Loans payments. Borrower also agrees it shall not obtain any future tax loan and shall pay all property taxes due and payable with respect to the Property before they become delinquent, including, but not limited to, all real property taxes against the Property for calendar year 2022.

"(c)    Payment in Full. Borrower shall pay all amounts outstanding under the Loan, including but not limited to, all principal and interest due under the Note, on or before the expiration of the Second Forbearance Period; provided, however, if on or prior to May 31, 2022 Borrower has made all payments required under the Loan Documents as modified by the First Forbearance Agreement and this Agreement and there shall exist—no Forbearance Default under this Agreement, then at such time, Borrower shall be entitled to obtain a full pay off of the Loan for the aggregate amount of (i) the then existing unpaid principal balance of the Note plus (ii) all accrued and unpaid interest at the Stated Rate minus (iii) the amount of $4,900,000.00 (the terms of the immediately preceding proviso in this Section 3(c) being herein referred to as the "Principal Forgiveness Provision"); provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement [Borrower's bankruptcy], Borrower, shall be entitled to a thirty (30) day cure period after receipt of notice from Lender."

4.      In consideration for the changes set forth above, Borrower and Guarantor agree that the Guaranty is hereby amended and modified so that Section 1(a) of the Guaranty is amended, modified and restated in its entirety to read as follows:

"1. Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender:

(a)     the full, faithful and prompt performance of Borrower's obligation to pay to Lender the Guaranteed Indebtedness in the amount of $105,312,28 on or prior to June 15, 2022; provided, however, the $105,312,28 Guaranteed Indebtedness amount shall automatically increase to $405,312,28, without any further action or agreements by Lender, Borrower and Guarantor, in the event payment in full of all sums due under the Note and Loan Documents, including, but not limited to, all accrued and unpaid interest under the Note, all outstanding principal under the Note and all sums expended by Lender under any of the Loan Documents, including, but not limited to protective advances, is not received by Lender on or prior to June 15, 2022;

9111317 v4 (70859.00050.000)

**Exhibit F-3**                                                    **2/4**

5.      Lender, Borrower and Guarantor agree there are no other changes to the SFA or Guaranty and hereby ratify the SFA and Guaranty as modified by this Third Amendment.

*[Signature Page follows.]*

**Exhibit F-3**                                                                    **3/4**

IN WITNESS WHEREOF, Lender, Borrower and Guarantor have executed this Second Amendment as of the date first written above.

**LENDER:**

VERITEX COMMUNITY BANK,
a Texas state-chartered bank

By: _____
Michael Carp
Executive Vice President, Director of
Special Assets

**BORROWER:**

BDFI LLC,
a New York limited liability company

By:_____
Ali Choudhri, sole Manager and Member

**GUARANTOR:**

_____
Ali Choudhri, individually

9111317 v4 (70859.00050.000)

**Exhibit F-3**                                        **4/4**

# Exhibit F-4

**Fourth Amendment to
Second Forbearance Agreement**

## FOURTH AMENDMENT TO SECOND FORBEARANCE AGREEMENT

This Fourth Amendment to Second Forbearance Agreement (this "Fourth Amendment") is made and entered into effective the 15th of June, 2022 (the "Effective Date"), by and among BDFI LLC, a New York limited liability company ("Borrower"), Ali Choudhri ("Guarantor"), and Veritex Community Bank, a Texas state bank ("Lender"), successor in interest by merger to Green Bank, N.A., a national banking association ("Original Lender").

WHEREAS, Lender, Borrower and Guarantor have entered into that certain Loan Agreement, dated March 9, 2018 (the "Loan Agreement"), as amended pursuant to that certain First Forbearance Agreement (the "FFA"), that certain Second Forbearance Agreement, dated April 26, 2021 (and together with that certain First Amendment to Second Forbearance Agreement, dated October 1, 2021, the Second Amendment to Second Forbearance Agreement, dated December 8, 2021, and the Third Amendment to Second Forbearance Agreement, dated March 10, 2022, the "SFA"), and now desire to amend the Loan Agreement, the FFA and the SFA as necessary to alter the terms and extend certain dates by which certain actions must be taken or payments must be made pursuant to the Loan Agreement and the SFA; and

WHEREAS, Lender, Borrower and Guarantor desire that this Third Amendment be executed and delivered to Lender on or prior to July 18, 2022;

NOW THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, Lender, Borrower and Guarantor hereby agree as follows:

1.     The first sentence of Section 1 of the SFA is hereby amended and restated in its entirety to read as follows:

"1.     Agreement to Forbear. During the period commencing on the date hereof and ending on the earlier to occur of 5:00 p.m. Dallas, Texas time on September 15, 2022 (the "Second Forbearance Termination Time"), or the date that any Forbearance Default (as defined in Section 11 of this Agreement) occurs (herein collectively, the "Second Forbearance Period"), and subject to the other terms and conditions of this Agreement, Lender agrees that with respect to the Existing Events of Default and the Section 3(d) and (e) Obligations, it will forbear from (w) exercising Lender's Enforcement Rights and (x) marketing or selling the Note and Loan to a third party."

2.     Section 3(c) of the SFA is hereby amended and restated in its entirety to read as follows:

(c) Payment in Full. Borrower shall pay all amounts outstanding under the Loan, including but not limited to, all principal and interest due under the Note, on or before the expiration of the Second Forbearance Period; provided, however, if on or prior to August 31, 2022 Borrower has made all payments required under the Loan Documents as modified by the First Forbearance Agreement and this Agreement and there shall exist— no Forbearance Default under this Agreement, then at such time, Borrower shall be entitled to obtain a full pay off of the Loan for the aggregate amount of (i) the then existing unpaid principal balance of the Note plus (ii) all accrued and unpaid interest at the Stated Rate minus (iii) the amount of $4,900,000.00 (the terms of the immediately preceding proviso in this Section 3(c) being herein referred to as the "Principal Forgiveness Provision"); provided, however, before a new non-monetary Event of Default shall come into existence, for non-monetary defaults other than under Section 4(E) of the Loan Agreement

**Exhibit F-4**                                           **1/3**

[Borrower's bankruptcy], Borrower, shall be entitled to a thirty (30) day cure period after receipt of notice from Lender; provided further however, if any such new-non monetary default is not cured, to Lender's reasonable satisfaction, for any or no reason, on or prior to August 31, 2022, then the Principal Forgiveness Provision shall be null and void and of no further force or effect."

3.      In consideration for the changes set forth above, Borrower and Guarantor hereby agree that:

(a)      the Guaranty is hereby amended and modified so that Section 1(a) of the Guaranty is amended, modified and restated in its entirety to read as follows:

"1. Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender:

(a)      the full, faithful and prompt performance of Borrower's obligation to pay to Lender the Guaranteed Indebtedness in the amount of $105,312,28 on or prior to September 15, 2022; provided, however, the $105,312,28 Guaranteed Indebtedness amount shall automatically increase to $405,312,28, without any further action or agreements by Lender, Borrower and Guarantor, in the event payment in full of all sums due under the Note and Loan Documents, including, but not limited to, all accrued and unpaid interest under the Note, all outstanding principal under the Note and all sums expended by Lender under any of the Loan Documents, including, but not limited to protective advances, is not received by Lender on or prior to September 15, 2022; and

(b)      immediately prior to the execution of this Third Amendment, Lender acknowledges that Borrower has made, and Lender has received, a prepayment of the Loan in the amount of $300,000.00, which entire sum Lender, upon full execution and delivery of this Third Amendment by Borrower and Guarantor to Lender, shall immediately credit against the unpaid principal balance of the Loan.

4.      Lender, Borrower and Guarantor agree that this Third Amendment has been signed and delivered by Borrower and Guarantor to Lender on or prior to July 18, 2022, there are no other changes to the SFA or Guaranty and hereby ratify the SFA and Guaranty as modified by this Third Amendment.

*[Signature Page follows.]*

**Exhibit F-4**                    **2/3**

IN WITNESS WHEREOF, Lender, Borrower and Guarantor have executed this Second Amendment as of the date first written above.

**LENDER:**

VERITEX COMMUNITY BANK,
a Texas state-chartered bank

By: _____
Michael Carp
Executive Vice President, Director of
Special Assets

**BORROWER:**

BDFI, LLC,
a New York limited liability company

By: _____
Ali Choudhri, Sole Manager and
Member

**GUARANTOR:**

_____
Ali Choudhri, individually

**Exhibit F-4**                                                        **3/3**