**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GALLERIA WEST LOOP** | § | **Case No. 23-50027-cag** |
| **INVESTMENTS, LLC,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |

---

**VERITEX COMMUNITY BANK'S MOTION FOR RELIEF FROM
AUTOMATIC STAY AS TO DEBTOR'S REAL PROPERTY LOCATED AT
50 BRIAR HOLLOW LANE, HOUSTON, TEXAS**

---

> **This pleading requests relief that may be adverse to your interests.**
>
> **If no timely response is filed within 14 days from the date of service, the relief requested herein may be granted without a hearing being held.**
>
> **A timely filed response is necessary for a hearing to be held.**

**TO THE HONORABLE CRAIG A. GARGOTTA, CHIEF U.S. BANKRUPTCY JUDGE:**

Veritex Community Bank ("**Veritex**"), as a secured creditor and party in interest in the above-captioned bankruptcy case (the "**Bankruptcy Case**" or "**Case**") of Galleria West Loop Investments, LLC (the "**Debtor**"), hereby files this *Motion for Relief from Automatic Stay as to Debtor's Real Property Located at 50 Briar Hollow Loan Lane, Houston, Texas* (the "**Motion**") and, in support hereof, respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Court**"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

2.     This Motion seeks relief under section 362 of title 11 of the United States Code (the **"Bankruptcy Code"**), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and the Rule 4001 of the Local Rules of this Court.

## II.     BACKGROUND

### A.     VERITEX'S HISTORY WITH THE DEBTOR

3.     Veritex holds a first-priority Deed of Trust lien on the Debtor's real property located at 50 Briar Hollow Lane, Houston, Texas 77027 (the **"Property"**), which secures approximately $20 million of outstanding loan obligations owed by the Debtor.  The loan was made in March 2018 by Veritex's predecessor, Green Bank, N.A. (**"Green Bank"**), to the former owner of the Property, BDFI, LLC (**"BDFI"**), in the original principal amount of $18,068,906.42 (the **"Loan"**).[1]  Green Bank merged with and into Veritex on January 1, 2019, at which point Veritex became the holder in due course of the Loan and all Loan Documents.[2]

4.     In October 2022, the Debtor replaced its affiliate, BDFI, as the borrower under the Loan when it acquired title to the Property via a foreclosure of its second-lien loan to BDFI.  The Debtor and BDFI are both owned and controlled by Ali Choudhri (**"Choudhri"**).

5.     The Loan originally matured over four years ago on December 30, 2018.  The maturity date was extended through December 30, 2019, by way of the two Modification, Renewal and Extension agreements.  Since that time, Veritex has agreed to forbear its remedies on six (6) different occasions, including two separate forbearance agreements and four amendments to the second

---

[1] The Loan and Veritex's first-priority lien on the Property are evidenced by, *inter alia*, the following documents (together with all other documents evidencing, securing, or related to the Loan, the **"Loan Documents"**): (i) that certain Deed of Trust and Security Agreement, as recorded in the Real Property Records of Harris County, Texas [RP-2018-362993] (the **"Deed of Trust"**); (ii) that certain UCC-1 Financing Statement filed with the New York Secretary of State [Filing No. 201803120116447; Ref. # 300591] (the **"UCC-1"**); and (iii) that certain Promissory Note dated March 9, 2018, by BDFI in favor of Green Bank in the original principal amount of $18,068,906.42 (the **"Note"**).  True and correct copies of the Deed of Trust, UCC-1, and Note are attached to Veritex's Motion to Dismiss, which is attached hereto as **Exhibit C**.

[2] *See* Debtor's *Disclosure Statement under 11 U.S.C. § 1125* [Dkt. #51] ("Veritex Community Bank is the successor in interest to the promissory note executed by BDFI, LLC and Green Bank, N.A., that is secured by the property located at 50 Briar Hollow Lane, Houston, Texas 77027").

forbearance agreement (collectively, the **"Forbearance Agreements"**). The Fourth Amendment to the Second Forbearance Agreement, entered in June 2022, extended the forbearance period through September 15, 2022.

6. Veritex has not received a payment on the Loan since July 20, 2022.

7. Veritex's willingness to enter the Forbearance Agreements was largely predicated upon repeated assurances that BDFI could sell the Property, and that it was in negotiations with a prospective buyer. Veritex is informed that, on or around September 2022, BDFI and this prospective buyer entered into a Purchase and Sale Agreement with a $28 million purchase price for the Property, that and the prospective buyer subsequently funded an earnest money deposit of more than $1 million. However, the parties were unable to close the sale due to, as Veritex was informed, funding complications related to the prospective buyer's financing. To Veritex's knowledge, no other parties have submitted contracts to purchase the Property.

8. Finally, having given several "second chances" and with the Prospective Buyer unable to close a sale, Veritex posted the Property for foreclosure in December 2022. The foreclosure sale was set for January 3, 2023. On the scheduled foreclosure date, the Debtor filed a last-minute emergency TRO Application in State Court. The State Court denied the TRO Application, leaving bankruptcy as the only remaining means of preventing the foreclosure. The State Court's denial apparently came as no surprise to the Debtor, because it was ready and able to file this Bankruptcy Case immediately after the State Court's ruling, at approximately 12:29pm on January 3, 2023 (the **"Petition Date"**).[3]

---

[3] This does not appear to be the first time Choudhri, the Debtor's owner, has leveraged the bankruptcy process in response to unfavorable state court litigation outcomes. The Debtor's Voluntary Petition [Dkt. #1] states that on October 7, 2022, the Debtor's affiliate, Houston Real Estate Properties, LLC (**"HREP"**), filed bankruptcy in the Southern District of Texas, Houston Division [Case No. 22-32998]. HREP is the Debtor's affiliate by way of Choudhri's common ownership of both entities. According to the pleadings in HREP's case, plaintiffs Osama Abdullatif and Abdullatif & Company, LLC had recently obtained a jury verdict against HREP and Choudhri in Harris County state court lawsuit, and a hearing was set for October 7, 2022 – the date of HREP's bankruptcy – to consider entry of a final judgment based on the verdict. Here

**B.** **THE DEBTOR DID NOT FILE THIS CASE IN GOOD FAITH**

9. The circumstances under which the Debtor filed this Bankruptcy Case lead to only one logical conclusion: the Debtor filed this Case solely to stop Veritex's foreclosure. The time of filing, alone, negates any argument to the contrary. The Debtor has no unsecured creditors and no employees. In fact, aside from years of unpaid property taxes, Veritex is the **only** creditor in this Case. No other claims are listed on the Debtor's bankruptcy schedules [Dkt. #6 and #32] (as amended, the "**Schedules**"), and no other claims have been filed. The Fifth Circuit has famously identified certain conditions that, if present, strongly indicate that a debtor's bankruptcy case was not filed in good faith. *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986). **Literally *all* of those conditions are present in this Case**.

10. Accordingly, on January 26, 2023, Veritex filed its *Motion to Dismiss Bankruptcy Case* [Dkt. #10] (the "**Motion to Dismiss**") seeking dismissal based on the Debtor's lack of good faith. The Motion to Dismiss (including exhibits) is attached hereto as **Exhibit C** and incorporated by reference into this Motion as if the same were fully set forth herein. Each of the *Little Creek* factors and the overwhelming indicia of the Debtor's bad faith is more fully addressed in the Motion to Dismiss. The Motion to Dismiss is currently set for hearing on June 8, 2023.

11. On top of its bad faith filing, the Debtor's post-petition conduct in this Case is equally cause for concern. Among other things, the Debtor has allowed insurance to lapse on the Property on at least one occasion, failed to pay taxes due post-petition, and continued to use Veritex's cash collateral without Veritex's consent or permission from this Court. The Debtor acknowledges by way of the Agreed Standstill Order (defined below) that all rents generated from the Property constitute Veritex's cash collateral.

---

again Choudhri ran the same play used against Veritex, first filing a last-minute request for a new trial, and then initiating HREP's bankruptcy filing shortly before the hearing.

12. Worse yet is that the Debtor's 2022 ad valorem property taxes, which were due on January 31, 2023, are past-due and owing in the amount of $505,581.30,[4] and the Debtor is unable to protect against the ongoing diminution of Veritex's collateral from property taxes that continue to accrue for the current year, as further discussed below. According to the Schedules, the Debtor has used high-rate tax loans to pay taxes on the Property since 2019.

## C. VERITEX NONETHELESS INITIATED GOOD FAITH POST-PETITION SETTLEMENT DISCUSSIONS WITH THE DEBTOR

13. Veritex gave the Debtor one last chance to find an equity investor or otherwise raise funds. On February 10, 2023, the Debtor, Veritex, and the aforementioned prospective buyer (and their respective counsel) met in person to explore the possibility of a global settlement as to the manner in which this Case should proceed. The parties were unable to come to terms on a settlement, however, they agreed to continue the hearing on Veritex's Motion to Dismiss and to certain terms regarding discovery and the Debtor's responses to Veritex's discovery requests. *See* Dkt. #24, *Agreed Motion to Continue Hearing*; Dkt. #27, *Notice of Hearing.*

14. Following continued discussions, the parties agreed to a 60-day "standstill period" whereby, among other things, the Debtor was given through May 3, 2023 to either file a Chapter 11 plan of reorganization or commence monthly payments to Veritex in accordance with section 362(d)(3) of the Bankruptcy Code. The parties also agreed to freeze all discovery efforts during the standstill period. The terms of this **"Standstill Agreement"** are set forth in the Court's *Agreed Order Extending Debtor's Time to File a Plan under 11 U.S.C. § 362(d)(3)* [Dkt. #45] (the **"Standstill Order"**).

15. The Standstill Agreement, like the prepetition Forbearance Agreements, was again predicated upon the Debtor finding an equity investor or buyer for the Property. Accordingly, Veritex conditioned the Standstill Agreement on bi-weekly calls with the Debtor and the prospective buyer

---

[4] *See* Proof of Claim No. 1 (Harris County).

for status updates as to the prospective buyer's ability to close the transaction. The last of these calls took place on April 24, 2023, where the buyer informed the Debtor and Veritex that its loan request had officially been denied. To Veritex's knowledge, this prospective buyer is unable to obtain funding necessary to close a sale, and the Debtor is not in discussions with any other potential buyers for the Property.

## D. DEBTOR IS UNABLE TO REORGANIZE IN CHAPTER 11

16. The Debtor filed its Chapter 11 Plan of Reorganization [Dkt. #52] (the **"Plan"**) and its Disclosure Statement under 11 U.S.C. § 1125 in support of the Plan [Dkt. #51] (the **"Disclosure Statement"**) on May 3, 2023. The unfortunate reality, however, is that the Debtor cannot confirm a Plan without somehow accomplishing what it has been unable to do for the past several years; *i.e.*, raise significant equity or find a buyer for the Property.

### (i) The Property is Not Generating Enough Revenue to Even Cover Basic Operating Expenses, and is in Need of Extensive Repairs

17. As further detailed in Veritex's Motion to Dismiss, the condition of the Property is atrocious, with years of neglected damage and deferred maintenance. The situation is so bad, in fact, that one of the buildings—the East Building—is vacant and abandoned, unfit for leasing to tenants. In October 2022, the largest tenant in the West Building notified the Debtor that "reasonable quantities of HVAC and elevator service" has not been provided by the Debtor "as provided for by the Lease and applicable law". The complaint (which was provided to Veritex in January 2023) referenced 36 individual incidents (17 in 2022) of "written requests" to the Debtor to "render the HVAC and elevators in good repair and working order and to provide tenant with reasonable quantities of HVAC and elevator service as provided for by the Lease and applicable law." Veritex has even received reports of vagrants living in the East Building, with feces being found throughout the lobby area and around the parking garage. The West Building, while at least habitable, is likewise in need of extensive repairs and deferred maintenance. Per the Debtor's rent roll, only around 40%

of the West Building is occupied, generating total rent income of only $67,000 per month. *See* **Exhibit A**, *Rent Roll.*

18. Even without accounting for debt service and property tax accruals, the Property is not generating enough rental income to cover the Debtor's basic operating expenses. *See* **Exhibit B**, *Projected Profit and Loss Report (Feb. 24, 2023).* And to make matters worse, according to one assessment, the Property needs at least $650,000 worth of immediate repairs, with over $1 million of repairs and needed in the coming years. To be clear, as Veritex understands, these only the baseline repairs necessary to continue operating the Property as-is. On information and belief, the Property needs millions of dollars in capital investment and expenditures to have any hope of increasing occupancy.

**(ii)   Even at Substantially Below-Market (*i.e.,* Unconfirmable) Terms, Debtor is Incapable of Funding a Plan of Reorganization**

19. The Debtor's Plan proposes to make interest-only payments for sixty months at 8% per annum (*less than the current Prime rate*) to the holders of allowed secured claims with a lump sum balloon payment at the end of year five. *See Plan*, §§ 8.3, 8.4. Unpaid ad valorem taxes of approximately $505,581 for the 2022 tax year will be paid with interest over twenty-four months. *Id.* at § 8.2. Assuming *arguendo* that the Debtor's purported Property valuation and secured claim estimates are accurate (which Veritex disputes), the Debtor must service monthly debt payments of at least $117,000 *per month* for the first two years of the Plan:

### Debtor's Proposed Plan

| Creditor | Claim Amount | Interest (Annually) | Terms (Months) | Monthly Payment |
|---|---|---|---|---|
| *Standard P&I Payments* | | | | |
| Harris County (Class 2; Claim No. 1) | $1,011,163 | 8.00%[5] | 24 | $45,732 |
| *Interest-Only Payments* | | | | |
| Caz Creek Holdings 2, LLC (Class 3) | $1,759,000 | 8.00% | 60 | $11,727 |
| Veritex (Class 4) | $9,000,000 | 8.00% | 60 | $60,000 |
| **Total Monthly Plan Payments:** | | | | **$117,459** |

[5] The Plan does not specify an interest rate for Class 2.

20.     Again, the Property is generating only around $67,000 per month in rent with $79,000 per month in projected operating expenses, leaving a $(12,000) monthly deficit *before* taking into account any required payments under the Plan; not to mention administrative expense claims that must be paid in order to confirm the Plan and property tax accruals. Moreover, the Plan's proposed interest rate of only 8% per annum is extremely low given the high-risk, non-amortizing, interest-only refinancing proposed under the Plan. Assuming a modest risk-adjustment of 3% above the current prime rate, Veritex believes the Debtor's **monthly** funding needs for the first two years of the Plan would be at least $150,000 per month, irrespective of tax accruals and any necessary repairs, capital improvements, new tenant leasing costs, or any number of additional untold expenses ultimately associated with increasing occupancy in the buildings.

21.     Without question, the Plan is facially unfeasible. The Debtor needs millions of dollars to fund the Plan, and it cannot (or at least has not) identified any realistic source of funding. The Disclosure Statement states merely that the Plan's funding "will come from the Debtor's Cash on hand, rent payments from the Debtor's affiliates, and the net proceeds of any sale, refinancing or other disposition of the Debtor's Assets." The financial projections purportedly attached to the Disclosure Statement are omitted from the filing.[6] *See Disclosure Statement*, 33.

**(iii)     The Plan is Not Confirmable for Numerous Additional Reasons**

22.     The Plan is not confirmable for a myriad of additional reasons, which Veritex will address in detail in its forthcoming objections to the Plan and Disclosure Statement. Namely, among other things, (i) the proposed treatment of secured claims is not fair and equitable in that the Plan fails to account for the incredibly high-risk terms on which secured claims are to be repaid; (ii) the Plan artificially impairs classes of claims, presumably for gerrymandering purposes; (iii) the Plan provides for equity to be reissued to existing equity holders (*i.e.*, Choudhri) without being marketed to the

---

[6] Debtor has provided Veritex with a working draft of its financial projections.

public, in violation of the absolute priority rule;[7] and (iv) the Plan provides no means of adequately protecting Veritex's collateral interests against the risk of, among other things, diminution from the Debtor's failure to pay post-petition property taxes, extensive disrepair, and increasing vacancies.[8]

### III.    REQUEST FOR RELIEF AND BASIS THEREFOR

23.    Veritex requests that the Court enter an order terminating the automatic stay with respect to the Property and authorizing Veritex to pursue all of its rights and remedies under the Loan Documents and applicable law, including foreclosure, pursuant to section 362(d) of the Bankruptcy Code.  At any hearing on this Motion, Veritex bears the burden of showing that the Debtor does not have equity in the Property, and the Debtor bears the burden of proof as to all other issues.  11 U.S.C. § 362(g).

### A.    THE STAY SHOULD BE TERMINATED FOR "CAUSE" UNDER 11 U.S.C. § 362(d)(1)

24.    The Court may terminate the automatic stay "for cause, including the lack of adequate protection of an interest in property," pursuant to section 362(d)(1) of the Bankruptcy Code.  11 U.S.C. § 362(d)(1).  In this Case, numerous independent grounds constitute "cause" for lifting the automatic stay, including the facts that (i) Veritex's interest is not adequately protected; (ii) the Property is continuing to deteriorate; and (iii) the Debtor did not file this Case in good faith.

---

[7] *See Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 454, 119 S. Ct. 1411, 1422, 143 L. Ed. 2d 607 (1999) ("[The Plan] is doomed… by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan."); *id.* at 458 ("[P]roviding junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii) [the absolute priority rule]").

[8] *See, e.g., In re Ainsworth*, No. 17-20418, 2018 WL 5304719, at *10 (Bankr. S.D. Tex. Oct. 23, 2018) ("It is common ground that the 'interest in property'… includes the right of a secured creditor to have the security applied in payment of the debt upon the completion of the reorganization, and that that interest is not adequately protected if the security is depreciating during the term of the stay." [quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988)]. In this case, a depreciation in value of NewFirst's interest arises because its interest is subject to the continuing, senior liens for ad valorem taxes. Under Texas law, a tax lien on real property takes priority over "the claim of any creditor of a person whose property is encumbered by that lien." TEX. TAX CODE ANN. § 34.05(b)(1). The real property taxes owed by Ainsworth, therefore, take priority over NewFirst's security interest in the 51.80 acres. A depreciation risk that a junior lien holder runs, such as NewFirst, is that senior liens, here the property taxes, will continuously accrue, thereby reducing NewFirst's interest in the property.  Consequently, in order to adequately protect NewFirst's interest in the 51.80 acres, Ainsworth must make adequate protection in payments in an amount equal to that depreciation.").

---

**(i)     Veritex's Interest in the Property is Not Adequately Protected**

25.     Adequate protection is required to "safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988). "Adequate protection ensures that a creditor receives the value for which it bargained prebankruptcy." *In re Vita Craft Corp.*, 625 B.R. 491, 503 (Bankr. D. Kan. 2020) (citing *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)).[9] To establish a prima facie case for lifting the stay based on a lack of adequate protection, creditors must offer "proof of either (1) a decline in the value of the Collateral or (2) the threat of such a decline." *Vita Craft Corp.*, 625 B.R. at 503.

26.     The right for which Veritex bargained outside of bankruptcy is the right to foreclose on the Property and apply the proceeds to payment of the Loan. But for the Debtor's filing of this Case and imposition of the automatic stay, Veritex would have foreclosed on the Property as of the Petition Date. Thus, for adequate protection purposes, Veritex is entitled to preservation of the foreclosure value of the Property as of the Petition Date. *Vita Craft Corp.*, 625 B.R. at 503-04 (citing 4 *Collier on Bankruptcy* ¶ 506.03[7][a] (Richard Levin & Henry J. Sommer, eds., 16th ed.)).[10]

27.     Since the Petition Date, property taxes have continued to accrue on the Property at an estimated rate of $42,132 per month. Harris County estimates that 2023 property taxes will be owed in the amount of $505,581.30. *See* Proof of Claim No. 1. As a result, the foreclosure value of Veritex's interest in the Property decreases by at least $42,132 for each month that the automatic stay remains

---

[9] Adequate protection may be provided in the form of (1) cash payments, (2) additional or replacement liens on property of the estate, or (3) "such other relief… as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

[10] *Cf. id.* at 506 ("For purposes of plan confirmation, the 'value' of [creditor's] interest in the Collateral is not foreclosure value, but replacement value.") (citing *Assocs. Commercial Corp. v. Rash*, 520 U S. 953, 962-63 (1997)).

in effect.[11] *In re Monroe Park*, 17 B.R. 934, 939 (D. Del. 1982) ("Obviously, any accruing property taxes, or water or sewer charges on the mortgaged property, which were not paid by Monroe Park during the pendency of the bankruptcy proceedings, would erode the value of Metropolitan's secured interest. Because claims based on such unpaid fees would be superior to the mortgage lien, they would effect a decline in Metropolitan's security."); *Vita Craft Corp.*, 625 B.R. at 504 (creditor was not adequately protected in light of debtor's failure to pay or escrow for property taxes, and deteriorating condition of property).

28.     The Debtor has taken no steps to escrow funds or otherwise protect Veritex's interest in the Property against accruing ad valorem taxes. Obviously, the Debtor cannot escrow any funds or otherwise protect Veritex's interest against this ongoing diminution, given the Debtor's negative cash flow and the fact that the Debtor's basic operating expenses, without any property tax accrual, exceed its monthly rental income by more than $12,000. Moreover, the Debtor has failed to meet its obligation for 2022 ad valorem taxes in the amount of $505,581.30, which was due post-petition on January 31, 2023. *See* Proof of Claim No. 1 (Harris County). The Debtor has in fact failed to pay any ad valorem taxes on the Property for more than three years, dating back to at least the 2020 tax year. *See* Proof of Claim No. 3 (Caz Creek Holdings 2, LLC tax loan for 2020 and 2021 tax years). The Debtor is clearly unable to protect Veritex's collateral from diminution for unpaid property taxes.

29.     Accordingly, "cause" exists to lift the stay as requested herein pursuant to section 362(d)(1). *In re Ainsworth*, No. 17-20418, 2018 WL 5304719, at *10 (Bankr. S.D. Tex. Oct. 23, 2018) ("[A] depreciation in value of NewFirst's interest arises because its interest is subject to the continuing, senior liens for ad valorem taxes.… Consequently, in order to adequately protect NewFirst's interest in the 51.80 acres, Ainsworth must make adequate protection in payments in an amount equal to that

---

[11] Under Texas law, Harris County's statutory tax lien takes priority over Veritex's first-lien Deed of Trust. TEX. TAX CODE §§ 32.01(d), 32.05(b).

depreciation."); *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001) ("[T]he erosion of the creditor's position or of a threatened erosion… may be shown through evidence of declining property values,… the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position."); *Vita Craft Corp.*, 625 B.R. at 503 (same); *see also In re Pena* (Bankr. D.P.R. Mar. 15, 2016) ("there is a continuous diminution of the estate because payments are not being made on the secured claim and there is no evidence that payments are being made on the property taxes."); *In re Infinite Swans, LLC*, No. BR 11-22880 RKM, 2011 WL 2293303, at *2 (Bankr. D. Utah June 9, 2011) ("the Property is subject to additional risk of diminution on account of, among other things, the 2011 real property taxes that are accruing"); *see also In re Nw. Timberline Enterprises, Inc.*, 348 B.R. 412, 417 (Bankr. N.D. Tex. 2006) ("The court finds it extremely significant that these Debtors are five years behind on paying their ad valorem and real estate taxes…"). The Debtor's failure to pay taxes owed after the Petition Date is also specifically enumerated as cause for dismissing or converting this Case pursuant to section 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(4)(I); *In re Premier Golf Properties, LP*, 564 B.R. 710, 726 (Bankr. S.D. Cal. 2016).

  **(ii) Additional "Cause" to Lift the Stay: Debtor's Lack of Good Faith in Filing this Case**

30. The Debtor's bad faith in filing this Case, as described above and in detail in Veritex's Motion to Dismiss, provides additional independent grounds for lifting the automatic stay under section 362(d)(1). *In re WGMJR, Inc.*, 435 B.R. 423, 433 (Bankr. S.D. Tex. 2010) ("The absence of good faith constitutes cause for lifting of the automatic stay.") (citing *Little Creek Dev. Co.*, 779 F.2d 1068); *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989) ("[T]he bankruptcy court did not err in its determination that there was bad faith to justify lifting the stay."); *Aniel v. HSBC Bank USA, Nat'l Ass'n*, 633 B.R. 368, 383 (N.D. Cal. 2021) ("The debtor's lack of good faith in filing a bankruptcy petition provides cause for lifting the automatic stay under 11 U.S.C. § 362(d)(1).") (quoting *In re*

*Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)); *In re Hyde*, 227 B.R. 170, 171 (Bankr. W.D. Ark. 1998) (debtor's bad faith in filing bankruptcy provided independent grounds and "cause" for lifting the stay); *In re Long Bay Dunes Homeowners Ass'n, Inc.*, 246 B.R. 801, 806 (Bankr. D.S.C. 1999) ("The Court concludes that the evidence before it as stated above in regard to the *Carolin* test for dismissal of the petition [for bad faith], also constitutes sufficient cause to grant relief from the stay.").

### (iii) Additional "Cause" to Lift the Stay: Debtor's Unauthorized Use of Cash Collateral and Violation of this Court's Orders

31.     In addition to the foregoing, cause exists to lift the stay based upon the Debtor's post-petition actions and conducting of this Case. For one thing, the Debtor has throughout this Case continued to use Veritex's cash collateral without Veritex's consent and without seeking permission for such use from this Court. The Debtor acknowledges that all rents generated from the Property constitute Veritex's cash collateral.[12] Veritex informed the Debtor early in the Case that it was willing to consider a proposal from the Debtor as to terms for cash collateral use, and Veritex repeatedly requested a proposed budget from the Debtor's counsel. Moreover, Veritex still has not received any accounting of the cash collateral used by the Debtor to date, as ordered by this Court and as the Debtor expressly agreed to provide under the Standstill Order.[13]

32.     The Debtor's unauthorized use of cash collateral post-petition, and its failure to account for Veritex's cash collateral in violation of this Court's Standstill Order, is further additional "cause" to lift the stay under section 362(d)(1), particularly given the significant diminution in the value of Veritex's collateral already suffered to date. *In re CGR, Ltd.*, 56 B.R. 305, 306-07 (Bankr. S.D. Tex. 1985) (finding cause to terminate automatic stay where debtor failed to comply with court order by

---

[12] *See Standstill Order*, ¶ 5 ("The Parties acknowledge and agree that the rents generated from the Property constitutes Veritex's cash collateral within the meaning of 11 U.S.C. § 363(a).").

[13] *See id.* ("The Debtor shall account for all of Veritex's cash collateral that has been received and/or spent by the Debtor since the Petition Date, including monthly rent rolls, income statements, and cash receipts and disbursements from the DIP bank accounts to the degree generated in the ordinary course of business.").

using cash collateral prior to submission of budget, failed to provide creditors with operating report, failed to remit excess of income over normal operating expenses, failed to advise creditors of any offer to purchase, and failed to obtain insurance on property); *Matter of May*, 169 B.R. 462, 472 (Bankr. S.D. Ga. 1994) (debtors' failure to comply with restrictions placed upon their use of cash collateral that were designed to protect secured creditor's interest would be grounds for relief from stay). Notably, like the Debtor's failure to pay taxes, the Debtor's unauthorized use of cash collateral to Veritex's detriment is also specifically enumerated "cause" for dismissal or conversion of this Case under section 1112(b). 11 U.S.C. § 1112(b)(4)(D); *see also Long Bay Dunes Homeowners Ass'n, Inc.*, 246 B.R. at 806 (cause for dismissal is also cause to lift the stay).

### (iv) Additional "Cause" to Lift the Stay: Continued Deterioration of the Property

33. Finally, the Debtor's continuous deferral of maintenance and failure to make necessary repairs to the Property constitute additional cause for lifting the stay under section 362(d)(1). *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 n. 9 (Bankr. S.D.N.Y. 1994) (stating that threats to a creditor's position "include the failure to maintain property insurance or the failure to keep the property in a good state of repair."); *Anthem Communities/RBG, LLC*, 267 B.R. at 871 ("[T]he erosion of the creditor's position or of a threatened erosion… may be shown through evidence of … failure to insure the property, **failure to maintain the property**, or other factors that may jeopardize the creditor's present position.") (emphasis added); *Vita Craft Corp.*, 625 B.R. at 503 (same).

34. As described above and in Veritex's Motion to Dismiss, the Property needs millions of dollars in repairs and capital improvements in order to increase occupancy rates, as necessary for the Debtor to fund any plan of reorganization, including at least $650,000 of *immediate* short-term deferred maintenance and "life safety" repairs. One of the two buildings on the Property is totally vacant and inhabitable, and the other is only 40% occupied. The Debtor cannot cover its most basic

expenses of operating the Property, much less afford to maintain the Property at any level that might justify continued imposition of the automatic stay.

35. Courts routinely grant relief from the automatic stay on facts akin to this Case. In the single asset real estate case of *In re WGMJR, Inc.*, for example, the court found cause to lift the stay based upon the facts that (i) the case was a two-party dispute with the debtor's secured lender, (ii) the debtor filed bankruptcy in bad faith for the purpose of gaining an unfair advantage over the lender, (iii) the debtor had no funds to renovate the property as necessary to secure additional tenants, and it had no demonstrable prospects of soon obtaining such funds, and (iv) without increasing its lease revenue, the debtor was unable to make adequate protection payments to the lender. *In re WGMJR, Inc.*, 435 B.R. 423, 433-34 (Bankr. S.D. Tex. 2010); *see also In re Mantachie Apartment Homes, LLC*, 488 B.R. 325 (Bankr. N.D. Miss. 2013) (finding lack of adequate protection for secured creditor's interest based on (i) debtor's inability to sell real property that secured the creditor's claim for an amount sufficient to satisfy the creditor's claim and (ii) lack of sufficient income to make payments adequate to protect creditor against further diminution of its security); *Vita Craft Corp.*, 625 B.R. at 504 (deferred maintenance and non-payment of property taxes established prima facie case of cause for lifting the stay).

**B. ALTERNATIVELY, THE STAY SHOULD BE TERMINATED UNDER 11 U.S.C. § 362(d)(2)**

36. The Court may terminate the automatic stay with respect to an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

37. According to the Debtor's Bankruptcy Schedules and the Claims Register in this Case, secured claims against the Property total approximately $22,575,121.81. Veritex will show at the hearing on this Motion that the Debtor does not have any equity in the Property. The Debtor states in its Plan that it believes the Property is worth $11 million. *See Plan*, § 8.4.

38.     The Debtor carries the burden to demonstrate that the Property is necessary to an effective reorganization. 11 U.S.C. § 362(g). The Debtor must show that the Property is "essential for an effective reorganization *that is in prospect*." *Nw. Timberline Enterprises, Inc.*, 348 B.R. at 430 (emphasis in original) (quoting *Timbers of Inwood Forest Assocs.*, 484 U.S. at 376). "This means ... there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.*

39.     The Debtor cannot carry this burden. Under circumstances akin to this Case, courts routinely determine that an effective reorganization is not feasible within any reasonable time. *See, e.g., Sutton v. Bank One, Texas, National Association (In re Sutton)*, 904 F.2d 327, 331 (5th Cir.1990) (determining that an effective reorganization was not feasible within a reasonable amount of time based on the facts that (i) only two tracts of land comprised debtor's entire bankruptcy estate, (ii) debtor had no net income, and (3) debtor was "in arrears on the tax payments on the two aforementioned properties."); *In re CGR, Ltd.*, 56 B.R. 305, 307 (Bankr. S.D. Tex. 1985) ("In order to reorganize effectively, the debtor would have to infuse substantial outside cash into the property cure the defects to lease as many units as possible in order to cover operating expenses and to cover debt service. The debtor failed to offer any evidence of such an infusion of capital. There can be no effective reorganization in the reasonably foreseeable future."); *Nw. Timberline Enterprises, Inc.*, 348 B.R. at 431 (finding no "reasonable prospect of reorganization" and granting stay relief where (i) cases involved a two-party dispute; (ii) debtors were delinquent on multiple years of property taxes, a fact that the court found "extremely significant"; (iii) debtors had few creditors aside from taxing authorities; (iv) debtors' only substantive assets were the real property securing the lender's loans; (v) debtors failed to generate positive cash flow; and (vi) debtors' plan was not feasible with an appropriate interest rate of 13.75% and interest payments at 8% (the then-current prime rate) were insufficient to confirm the plan).

40.     Accordingly, the Court should lift the automatic stay pursuant to section 362(d)(2).

**C.** **ALTERNATIVELY, THE STAY SHOULD BE TERMINATED UNDER 11 U.S.C. § 362(d)(3)**

41. Because this is a "single asset real estate" Case,[14] the Court may terminate the automatic stay under section 362(d)(3) of the Bankruptcy Code if the Debtor fails to either (A) file a plan of reorganization "with a reasonable possibility of being confirmed within a reasonable time," or (B) commence monthly payments to Veritex "in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate," within ninety days following the Petition Date. 11 U.S.C. § 362(d)(3). Pursuant to the Standstill Order, the Parties agreed to extend the Debtor's deadline under section 362(d)(3) for an additional thirty days, through May 3, 2023.

42. As further addressed herein above, the Debtor's Plan has no reasonable possibility of being confirmed because, *inter alia*, the Debtor cannot demonstrate any feasible means of funding the Plan. The Debtor bears the burden of showing that the Plan is reasonably confirmable with a reasonable time. 11 U.S.C. § 362(g). The Court's analysis in the case of *CGR, Ltd.* is directly on point in summarizing why the Debtor is unable to do so in this Case:

> In order to reorganize effectively, the debtor would have to infuse substantial outside cash into the property cure the defects to lease as many units as possible in the order to cover operating expenses and to cover debt service. The debtor failed to offer any evidence of such an infusion of capital. There can be no effective reorganization in the reasonably foreseeable future.

*CGR, Ltd.*, 56 B.R. at 307.

43. It is undisputed that the Debtor has not made any payments to Veritex since the Petition Date. Indeed, Veritex has not received any payments on the Loan since July 20, 2022.

44. Accordingly, the Court should lift the automatic stay pursuant to section 362(d)(3).

---

[14] *See* Debtor's Voluntary Petition [Dkt. #1].

## IV.     PRAYER

WHEREFORE, for the reasons stated herein, Veritex respectfully requests that the Court enter an order terminating the automatic stay with respect to Veritex and its collateral, authorizing Veritex to immediately pursue all of its rights and remedies under the Loan Documents and applicable law, and granting Veritex such other and further relief to which is justly entitled.

DATED:  May 12, 2023

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By:     */s/ Joseph M. Coleman*
      Joseph M. Coleman
      State Bar No. 04566100
      Kyle Woodard
      State Bar No. 24102661

Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: kwoodard@krcl.com

**Attorneys for Veritex Community Bank**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 12, 2023, a true and correct copy of the foregoing Motion was filed with the Court and served (i) via the Court's electronic case filing system (ECF) upon all parties receiving such service in this bankruptcy case, and (ii) via email and/or first-class U.S. mail, postage prepaid, upon the following parties and all other parties listed on the attached Service List.[15]

Melissa S. Hayward
Hayward PLLC
10501 N Central Expy, Suite 106
Dallas, TX 75231
MHayward@HaywardFirm.com

Ron Satija
Hayward PLLC
7600 Burnet Road, Suite 530
Austin, TX 78757
rsatija@haywardfirm.com

Tara L. Grundemeier
Linebarger Goggan Blair & Sampson, LLP
PO Box 3064
Houston, TX 77253-3064
houston_bankruptcy@lgbs.com

Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
hspector@spectorcox.com

Galleria West Loop Investments, LLC
5900 Balcones Drive, Suite 100
Austin, TX 78731

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78295-1601

U.S. Bankruptcy Court
615 E. Houston Street, Room 597
San Antonio, TX 78205-2055

_/s/ Joseph M. Coleman_
Joseph M. Coleman

---

[15] Copies of **Exhibit C** (Veritex's Motion to Dismiss [Dkt. #10]) were omitted from service by first-class mail.